THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* SCANDIA BOOKS, INC., *et al.*, Defendants-Appellants.

First District (4th Division)    No. 80-2313

Opinion filed November 12, 1981.—Rehearing denied December 29, 1981.

Adam Bourgeois and Michael Null, both of Chicago, for appellants.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants appeal from the order for a permanent injunction issued by the circuit court restraining them from operating or permitting the operation of an adult bookstore as defined in the Chicago Adult Use Ordinance (Ordinance) (Municipal Code of the City of Chicago 1977, ch. 194C, §§2, 3, 4.1(4)).

On appeal, defendants present the following issues for review: (1) whether chapter 194C of the Municipal Code of the City of Chicago or, in the alternative, section 3A thereof, is unconstitutionally vague and indefinite so as to violate the due process clauses of the Illinois and the United States constitutions; (2) whether the trial court's order of January 23, 1981, amending its order of August 20, 1980, is void as being an invalid exercise of judicial authority; and (3) whether the trial court erred by granting a permanent injunction against defendants. We affirm.

On September 24, 1979, the City of Chicago (City) filed a complaint for injunctive and other relief against defendants. The complaint alleged that Scandia Books, Inc., doing business as Broadway Book Shop, located at 3120-22 North Broadway, was doing business as an adult bookstore within the definitions of sections 3A, 3E, and 3F of the Ordinance. The City prayed for a preliminary injunction and permanent injunction to enjoin defendants from operating and maintaining an adult bookstore in any zoning district other than a C-2 zoning district. Municipal Code of the City of Chicago 1977, ch. 194C, §4.1(4).

On October 19, 1979, defendants filed a motion to dismiss. On December 18, 1979, after a hearing, plaintiff's motion for a preliminary injunction was denied. On March 25, 1980, the court denied defendants' motion for dismissal.

On August 13, 1980, an evidentiary hearing was held on plaintiff's motion for a permanent injunction. At that hearing, Harry Manley, the zoning administrator for the city of Chicago, testified that the zoning for the property in question is B4-4, and that the zoning for an adult use is C-2 commercial district.

Thomas Bohling, a policeman for the Chicago Police Department, testified that on August 24, 1979, he visited Scandia-Broadway Book Shop at 3120-22 North Broadway. He observed magazines in racks along the walls in the store. Arthur Martinez was working as a clerk at the store. At the entrance to the bookstore, magazines such as *Time, Life* and *Newsweek* were displayed. As the witness walked through the store, the magazines on display depicted human nudity and sex acts between human beings. After browsing through several magazines, Bohling selected one

of the sex-illustrated magazines, *Hustler*. When he attempted to pay for the magazine, Martinez refused his money. Bohling gave him a receipt for the magazine. The magazine was admitted into evidence over defendants' objection.

In an affidavit attached to plaintiff's complaint, Officer Bohling stated that on August 27, 1979, he issued a complaint against Arthur Martinez, employee of Scandia Books, Inc., owner of Broadway Book Shop. The complaint alleged a violation of the Ordinance (Municipal Code of the City of Chicago 1977, ch. 194C, §4.1(4)), which provides that no adult use shall be located in any zoning district except a C-2 zoned area. Subsequently, on August 29, 1979, Bohling arrested Martinez, charging him with a violation of the obscenity statute (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(a)(1)).

Robert Eggert testified that he is a police officer of the city of Chicago, and that he was sent to investigate the bookstore in question in June 1980. The store was divided into two parts by a swinging door and a counter. The front area of the store has racks containing magazines such as *Time* and *Life*, and Bibles and paperback books. In the back area, there were rubber paraphernalia, magazines and books pertaining to sexual acts between members of the same sex and the opposite sex. On June 13, 1980, Officer Eggert returned to the bookstore to have an evidence technician take pictures of the interior of the store. Those photos were taken with the cooperation of the office of the corporation counsel and Adam Bourgeois, attorney for defendants.

Eggert identified photo group exhibit 2 as a depiction of the front part of the store on June 13, 1980. Photo group exhibit 1 showed the outside of the store front and the entrance. Photo group exhibit 3 was identified by Eggert as the back area of the bookstore. The photos showed the different booths which contained adult films, the south wall with books on lesbianism, and the area where rubber products are displayed.

On redirect examination, Eggert indicated that the peep show he viewed portrayed a female and a male engaged in intercourse. Two peep shows per booth were offered at the bookstore and there were six booths.

The defense presented Arthur Martinez as their witness. He testified that on August 15, 1979, he was the manager of the Scandia Book Shop. He also stated that exhibit 2 did not accurately portray the store as it existed in August 1979. In the front section of the store were popular titles and in the rear, the store was being remodeled. Martinez indicated that during the months of August and September 1979, 20 to 25 percent of the bookstore material was adult material.

On cross-examination, Martinez indicated that during August and September 1979, the store had about 125 pieces of film depicting sexual

activities, and the floor area used to display condoms and other sex-related materials consisted of approximately 30 square feet.

The trial court ruled that the regulated uses of the Ordinance had been violated and enjoined further use of the premises as an adult bookstore.

On December 10, 1980, plaintiff filed a petition for a rule to show cause, claiming that defendants were in violation of the court's order for injunction. On January 23, 1981, a hearing was held on this petition. At issue was the meaning of the definition of an adult bookstore as defined in the Ordinance (Municipal Code of the City of Chicago 1977, ch. 194C, §3A). The trial court explained its order of August 20, 1980, and restrained defendants from exhibiting for sale or selling *all* books, magazines or films depicting, describing or relating to specified sexual activities or specified anatomical areas.

It is from the orders of August 20, 1980, and January 23, 1981, that defendants appeal.

Defendants contend the Ordinance (Municipal Code of the City of Chicago 1977, ch. 194C, §3A) is so vague and indefinite as to violate the due process clause of both the United States Constitution and the Illinois Constitution. Furthermore, in section 3A, the words, "substantial" and "significant" do not reveal what quantity of adult materials may be sold in order to fit within the definition of an adult bookstore.

Section 3A of the Ordinance provides:

> "Section 3. Definitions.
>
> A. Adult Book Stores. An establishment having as a substantial or significant portion of its stock in trade, books, magazines, films for sale or viewing on premises by use of Motion Picture devices or any other coin-operated means, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to 'Specified Sexual Activities,' or 'Specified Anatomical Areas,' or an establishment with a segment or section devoted to the sale or display of such material."

Moreover, defendants argue, the laws regulating speech protected by the first amendment should be narrowly drawn and measured by stricter standards.

■■ The test for an ordinance which affects first amendment rights was succinctly stated in *United States v. O'Brien* (1968), 391 U.S. 367, 377, 20 L. Ed. 2d 672, 680, 88 S. Ct. 1673, 1679:

> "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the inci-

dental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

Applying this test to the instant case, we hold that the right of the City to reasonably regulate and restrict the location of certain uses, whether business, residential or industrial, is clear. (*Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114.) Further, the ordinance in question was enacted by the City to deter the decrease in property values, increase in crime, neighborhood decline, and the adverse effect on business and residential districts caused by the influx of adult bookstore businesses. The primary control or regulation of the Ordinance is the prevention of concentration of these kinds of uses (adult) in any one area. Chicago has provided that no adult use shall be located within 1000 feet of any zoning district which is zoned for residential use. (Municipal Code of the City of Chicago 1977, ch. 194C, §4.1(2).) Thus, the restriction on first amendment freedoms is no greater than is necessary to further Chicago's interest in the protection of its citizenry and neighborhoods.

In support of their claim that the provision of the Ordinance which defines adult bookstores is vague, defendants point to the words, "substantial or significant" as being unconstitutionally vague. We find defendants' argument without merit. The word, "substantial" as used in the definition of adult bookstores is not so indefinite as to render the Ordinance void and unenforceable. That term has been construed as having an ascertainable meaning in numerous statutory schemes. (See *Roop v. Richardson* (W.D. Va. 1971), 324 F. Supp. 1130; *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 69 N.W.2d 217.) Additionally, the definition of an adult bookstore in the Ordinance includes an establishment with a segment or section devoted to the sale or display of adult material. Clearly, the record shows that defendants' bookstore contained a section devoted to the sale or display of adult material.

■■ We cannot say that the Ordinance is so vague as to violate the due process clause of the Illinois or the United States constitutions. The language in question gave defendants a sufficiently definite warning and fair notice as to the forbidden conduct regulated by the Ordinance. See *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440.

■■ Defendants next contend that the trial judge's order of January 23, 1981, amending its order of August 20, 1980, was an invalid exercise of judicial authority and must be held as void. Plaintiff maintains that the trial judge's order of January 23, 1981, is not properly before this court. Hence, plaintiff contends the appellate court has jurisdiction to review only those questions which were present on the record as it existed on the date when the notice of appeal was filed—August 20, 1980. Plaintiff is

correct in this assertion (see *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472-73, 227 N.E.2d 760, 762). However, we will address defendants' contention because it is generally accepted that a notice of appeal is to be liberally construed. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380, 382.

■■ It is undisputed that upon filing a notice of appeal, the circuit court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches instanter. (*Rickard v. Pozdal* (1975), 31 Ill. App. 3d 542, 545, 334 N.E.2d 288, 291.) Of course, once the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice of appeal affects the subject that the trial court might seek to act upon. (*Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 293, 325 N.E.2d 76, 78.) However, the trial court retains jurisdiction to hear and determine matters arising independent of and unrelated to that portion of the proceeding that pends on appeal. (*Martin-Trigona*, at 293), and purely collateral or supplemental matters are left under the control of the trial court (*Southland Corp. v. Village of Hoffman Estates* (1970), 130 Ill. App. 2d 311, 316, 264 N.E.2d 451, 455.) Further, while an appeal is pending, the trial court may amend the record to correct matters of inadvertence or mistake, but it is denied the power to remedy defects of substance which would make it a new case. *Southland Corp.*, at 315-16.

■■ We believe the above authorities establish that a trial court's post-appeal jurisdiction is not completely abrogated by the filing of a notice of appeal. We are of the opinion that the trial judge's order of January 23, 1981, was merely explanatory and was not a change of substance that would present a new case to this court. Therefore, we reject defendants' argument that the trial judge's order is void.

■■ Defendants contend there was not sufficient evidence presented at trial to grant a permanent injunction. First, defendants assert that the trial judge erroneously allowed *Hustler* magazine to be admitted into evidence. It has been established that objects are subject to seizure and may be introduced into evidence if these objects fall in plain view of an officer who has a right to be in a place where he has such a view. (*Harris v. United States* (1968), 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069, 88 S. Ct. 992, 993.) Accordingly, commercial premises which are open to the public may be reasonably inspected in many more situations than private homes. (*United States v. Golden* (4th Cir. 1969), 413 F.2d 1010, 1011.) Officer Bohling entered the bookstore and attempted to purchase *Hustler* magazine, which was no more than an ordinary customer would do. The store was open to the public; thus, the officer had a right to be there and could seize items that were in plain view.

Finally, defendants assert that the admission of the June 13, 1980, photographs depicting the interior of the bookstore was clearly erroneous because those photographs did not accurately reflect the interior of the bookstore as of September 1979.

■■ The admissibility of photographs has been held to be within the sound discretion of the trial court. (*Casson v. Nash* (1977), 54 Ill. App. 3d 783, 796, 370 N.E.2d 564, 574.) In order for a photograph to be admitted into evidence, it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to a particular issue and be verified by such witness on personal knowledge as a correct representation of these facts. (*Nash*, at 795.) Verification may be furnished by the testimony of any competent witness who has sufficient knowledge to testify that the photograph fairly represents what it purports to portray. (*Nash*, at 795.) Officer Bohling's testimony verified that the June 13, 1980, photographs were a fair and accurate depiction of the store as he observed it in August 1979 except for the construction work that was occurring in August.

■■ Further, where the appearance and condition of inanimate objects are sought to be shown at a certain time, photographs taken after a material change in such appearance and condition are generally inadmissible. (*Nash*, at 795.) However, this does not mean that the situation or condition must be precisely the same. The photographs are admissible if the condition is substantially unchanged or if, as here, the things sought to be shown by the photograph remain truthfully represented, or if the photograph is satisfactorily shown to be such an accurate representation that it is immaterial when the photograph was taken. *Nash*, at 795.

After carefully examining the record, we hold that the trial judge did not err by admitting *Hustler* magazine into evidence, and he did not abuse his discretion by admitting the photographs into evidence. Accordingly, the issuance of the permanent injunction is upheld.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.