(No. 58735.—

ROANOKE AGENCY, INC., *et al.*, Appellees, v. JIM EDGAR, Secretary of State, Appellant.

*Opinion filed March 23, 1984.*

316

SIMON, J., dissenting.

Wayne Whalen and Daniel Harris, of Mayer, Brown & Platt, of Chicago, for appellant.

Morton John Barnard, of Barnard & Barnard, of Chicago, for appellee Roanoke Agency, Inc.

Charles W. Murdock, Deputy Attorney General, and Jeffrey W. Finke, Assistant Attorney General, both of Chicago, for intervenor-appellee Attorney General Neil F. Hartigan.

JUSTICE UNDERWOOD delivered the opinion of the court:

Roanoke Agency, Inc. (Roanoke), an Illinois corporation, delivered amendments to its articles of incorporation to Jim Edgar, the Secretary of State of Illinois. Based upon his determination that the issuance of nonvoting shares of corporate stock as provided in the amendments would be contrary to section 8 of the Transition Schedule of our 1970 Constitution relating to cumulative voting rights, the Secretary refused to approve and file the amendments. Roanoke sought leave of this court to file a petition for an original writ of *mandamus* against the Secretary to compel approval and filing, and simultaneously filed a complaint for judicial review of the Secretary's action in the circuit court of Cook County. (Ill. Rev. Stat. 1981, ch. 32, par. 157.148.) We denied leave to file the original action, but ordered that

the administrative review proceeding in the circuit court be expedited.

The Attorney General of Illinois, as *amicus curiae*, participated in the circuit court proceedings in support of Roanoke's position. That court entered judgment for the corporation and ordered the Secretary to file the articles of amendment as submitted. Because this case presents significant questions concerning Illinois corporations, we granted the Secretary's motion for direct appeal to this court pursuant to Supreme Court Rule 302(b) (87 Ill. 2d R. 302(b)). We also granted the Attorney General leave to intervene in the proceedings in this court.

The facts and circumstances surrounding this case are not disputed, and involve constitutional interpretations. As pertinent here, the Illinois Constitution of 1870 provided:

> "The General Assembly shall provide, by law, that in all elections for Directors or managers of incorporated companies every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner." (Ill. Const. 1870, art. XI, sec. 3.)

By allowing shareholders to cast their respective votes for a single candidate or distribute them among two or more candidates, cumulative voting was designed to enable minority stockholders of a corporation to gain representation on its board of directors in proportion to their voting strength. *Wolfson v. Avery* (1955), 6 Ill. 2d 78.

The constitutional guarantee of cumulative voting rights to every shareholder has also been interpreted by this

court to include significant ramifications. For example, it has been held to preclude the issuance of stock depriving the shareholder of the right to vote for directors (*People ex rel. Watseka Telephone Co. v. Emmerson* (1922), 302 Ill. 300), to prohibit directors from filling vacancies on the board of directors (*People ex rel. Weber v. Cohn* (1930), 339 Ill. 121), and to forbid the classification and staggered election of directors (*Wolfson v. Avery* (1955), 6 Ill. 2d 78).

The protective benefits afforded by cumulative voting, however, are accompanied by limitations upon Illinois corporations, the most notable of which resulted from the preclusion of nonvoting shares. By prohibiting the issuance of such shares, the 1870 Constitution prevented the issuance and sale of stock without an accompanying dilution of corporate control. That is, a corporation could not sell stock in order to raise capital without at the same time reducing the control of current shareholders as a result of the increased number of voting shares. These restrictions upon corporate control resulting from the constitutional guarantee of cumulative voting came to be perceived by corporate promoters and advisers as impediments to incorporation under the laws of this State. (See generally, 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1817-24 (hereinafter cited as Proceedings).) As a result, corporations frequently chose to incorporate in other States with less restricted corporate climates or took other evasive action. Consequently, Illinois was placed at a competitive disadvantage in its efforts to attract or retain corporations.

It was in this context that the advisability of retaining the cumulative voting requirement was contested during the 1970 Illinois constitutional convention. Following extensive debate, the constitutional mandate of cumulative voting rights in the election of directors was eliminated, and the Illinois Constitution of 1970 simply provides that "Corporate charters shall be granted, amended, dissolved, or extended only pursuant to general laws." (Ill. Const. 1970,

art. XIII, sec. 6.) The net effect is that the present Illinois Constitution no longer requires that, in the election of directors, every share of stock must be a voting share and that each shareholder be entitled to cumulate his votes. Significantly, these matters were not determined by the new constitution but were instead left to the legislature to address. Thus, the statutes which had been enacted under the Illinois Constitution of 1870, which necessarily provided cumulative voting rights for each share, remained in effect even though no longer constitutionally required. See Ill. Const. 1970, Transition Schedule, sec. 9.

In eliminating the constitutional mandate of cumulative voting, however, the drafters of the Illinois Constitution of 1970 included another provision addressed to existing corporations. Section 8 of the Transition Schedule of the 1970 Constitution provides:

> "Shareholders of all corporations heretofore organized under any law of this State which requires cumulative voting of shares for corporate directors shall retain their right to vote cumulatively for such directors."

This constitutional provision applies to all corporations in existence on July 1, 1971, the effective date of the new constitution.

The Illinois legislature also chose to retain the statutory cumulative voting requirements until 1981. Effective September 25, 1981, section 28 of the Business Corporation Act was amended to include the following provisions:

> "(b) The articles of incorporation of any corporation incorporated after December 31, 1981, may limit or eliminate cumulative voting rights in all or specified circumstances, or may eliminate voting rights entirely, as to any class or classes or series of stock of such corporation; provided that one class of shares or series thereof shall always have voting rights in respect of all matters in every corporation.
>
> (c) A corporation incorporated before January 1, 1982 may amend its articles of incorporation to eliminate

cumulative voting rights under all or specified circumstances, or to eliminate voting rights entirely, as to any class or classes or series of stock of such corporation; provided that one class of shares or series thereof shall always have voting rights in respect of all matters in every corporation. No such amendment to the articles of any such corporation shall be valid unless approved unanimously by the holders of all shares of all classes and series of stock issued and outstanding and entitled to vote at an election of directors." (Ill. Rev. Stat. 1981, ch. 32, pars. 157.28(b), (c).)

These permissive alternatives modified the previous statutory requirements that each outstanding share was entitled to one vote on each matter submitted to a vote at a meeting of shareholders and that of cumulative voting in the election of corporate directors. Ill. Rev. Stat. 1981, ch. 32, par. 157.28(a).

Roanoke was incorporated under Illinois law in 1963, and, in accordance with the then-applicable constitutional and statutory mandates, its articles of incorporation authorized the issuance of one class of stock, common stock, the holders of which enjoyed full cumulative voting rights. The proposed amendments to its articles of incorporation which it delivered to the Secretary of State grant the corporation the authority to issue two classes of shares in lieu of its existing common shares. Class A shares were to be nonvoting. Class B shares were afforded full voting rights, including the right of cumulative voting for the election of directors. The class B shares were to be issued and exchanged for the existing common shares, thereby allowing all existing common shareholders of the corporation to retain their rights to vote cumulatively for the election of directors. The articles of amendment had been approved unanimously by all of Roanoke's existing shareholders.

The Secretary of State concedes that Roanoke has complied with the applicable provision of the Business Corporation Act as amended (Ill. Rev. Stat. 1981, ch. 32, par.

157.28(c)). Nevertheless, the Secretary refused to approve and file the articles of amendment, contending that the statute is invalid as violative of section 8 of the Transition Schedule in that it fails to preserve the traditional cumulative voting rules for Illinois corporations that were in existence before the effective date of the Illinois Constitution of 1970.

The appellees, Roanoke and the Attorney General, respond by arguing that, notwithstanding the existence of section 8 of the Transition Schedule, the Illinois Constitution of 1970 completely eliminated the constitutional cumulative voting mandate for all corporations, including those organized before its effective date. The appellees rely upon the earlier quoted general language of article XIII, section 6, of the Illinois Constitution of 1970 to support their contention that all matters relating to corporations have been left to the legislature. Under this theory, section 8 of the Transition Schedule was intended merely to insure that the existing statutory cumulative voting requirements remained in effect until the legislature enacted laws otherwise. Thus, appellees argue, by enacting the 1981 amendment to the Business Corporation Act, the legislature effectively superseded this section of the Transition Schedule. In fact, the appellees argue that, in light of the 1981 statutory amendment, section 8 of the Transition Schedule has been "executed" and no longer remains as a part of the Constitution. We do not agree.

First, in order to eliminate any provision of the Transition Schedule, the introduction to that schedule requires that the Attorney General must certify to the Secretary of State that the provision has been "executed." No such certification appears in this record. Nor do we believe such certification would be appropriate under the circumstances here. Section 9 of the Transition Schedule provides that all laws which are not in conflict with the 1970 Constitution remain in force until they expire by their own limitation or

are altered or repealed. Thus, to interpret section 8 of the Transition Schedule as appellees suggest would be to render it superfluous. This court has previously recognized that " '*** the fundamental rule that each word, clause or sentence must, if possible, be given some reasonable meaning [citations] is especially apropos to constitutional interpretation.' " *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 466, quoting *Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, 230, *cert. denied* (1969), 393 U.S. 1062, 21 L. Ed. 2d 706, 89 S. Ct. 716.

Our review of the language and history of section 8 of the Transition Schedule leads us to conclude that this provision was clearly designed to ensure that shareholders of then-existing corporations retained their cumulative voting rights notwithstanding elimination of the constitutional guarantee of such rights for shareholders of corporations incorporated after June 30, 1971. The language of this section itself plainly provides that such shareholders retained their right to vote cumulatively for directors. Further, the constitutional debates clearly establish that this section was intended to ensure that cumulative voting remained constitutionally protected for the shareholders of those corporations which were in existence when the 1970 Constitution took effect. See generally 3 Proceedings 1815-26; 5 Proceedings 4043, 4219.

In balancing the desire to attract new corporations by allowing more flexibility in corporate structure and control against the generally desirable minority-shareholder protection afforded by cumulative voting, the drafters of the Constitution adopted a compromise. There was no need to attract the already incorporated businesses for they were in existence and were apparently content to operate under Illinois' cumulative voting requirements. But, in an effort to facilitate the attraction of out-of-State or new corporations, the burden of constitutionally required cumulative voting was prospectively eliminated. In light of section 8,

and in order to avoid a retroactive construction with the potential for impairing the shareholders' contract rights, the convention's General Government Committee, which was responsible for the drafting of the corporations article of the Illinois Constitution of 1970, summarized the effect of the elimination of the cumulative voting requirement as follows:

> "In order to place the issue in proper perspective, it is important to point out that the elimination of the mandatory cumulative voting requirement from the Constitution, will not, in the Committee's view, affect the rights of minority shareholders of existing corporations to cumulate their votes in director elections. *** Thus, any change in the laws requiring cumulative voting will have prospective effect only. Accordingly, when speaking to the issue of protection of minority representation on corporate boards of directors, the corporations referred to are those to be organized *after* the effective date of the new Constitution." (Emphasis in original.) 6 Proceedings 625.

The appellees also argue that, even if section 8 is given substantive effect, it applies only to those shareholders who owned shares and enjoyed cumulative voting rights before its effective date, as opposed to all shareholders of corporations which were in existence at that time, including those who purchased stock after June 30, 1971. This distinction assumes particular significance under the facts of this case. Roanoke proposes to issue two classes of stock, one voting and one nonvoting. The nonvoting class would, of course, violate the constitutional cumulative voting guarantee if it applies to pre-1971 corporations. However, appellees say, the existing shareholders of Roanoke will effectively retain their cumulative voting rights by exchanging their existing shares for a proportionate allotment of new voting shares. Thus, although the corporation would no longer be subject to the cumulative voting mandate, the existing shareholders would retain their cumulative voting rights and thereby satisfy section 8 of the Tran-

sition Schedule as interpreted by appellees. We cannot accept this interpretation.

We concede that the language of section 8 is capable of the interpretation proposed by appellees, for it is not indisputably clear whether the rights preserved apply to the existing corporations or to the existing shareholders of such corporations. When reference is made to the constitutional debates surrounding the adoption of this provision, however, any ambiguity evaporates, for the focus is clearly upon the existing corporations, rather than the existing shareholders. It is apparent to us that the framers of the Constitution intended to distinguish between corporations, not between shareholders of the same corporation. This conclusion is also dictated by practical considerations. Under the appellees' interpretation, the holders of identical shares would potentially possess differing voting rights dependent upon when their shares were acquired. Corporate management and the Secretary of State's oversight duties would be complicated by the necessity to inquire into stock-acquisition dates. It does not seem reasonable to attribute this intent to the constitutional drafters.

We accordingly hold that section 8 of the Transition Schedule guarantees to all shareholders of all Illinois corporations in existence prior to July 1, 1971, the right to vote cumulatively for corporate directors, notwithstanding the time when such shares were acquired. Because this right is guaranteed by the constitutional provision, such shareholders may not be deprived of their cumulative voting rights against their will by statute, corporate action, or otherwise. See, *e.g., Wolfson v. Avery* (1955), 6 Ill. 2d 78 (statute); *People ex rel. Watseka Telephone Co. v. Emmerson* (1922), 302 Ill. 300 (corporate resolution); *Luthy v. Ream* (1915), 270 Ill. 170 (stockholder agreement).

This determination, however, does not end our inquiry. The statute here involved provides that any amendment to the articles of incorporation of a corporation organized be-

fore January 1, 1982, which purports to restrict cumulative voting rights would be invalid "unless approved unanimously by the holders of all shares of all classes and series of stock issued and outstanding and entitled to vote at an election of directors." (Ill. Rev. Stat. 1981, ch. 32, par. 157.28(c).) The appellees submit that, by requiring unanimous consent of the shareholders in order to eliminate cumulative voting rights, any question regarding the validity of the statute is obviated. The Secretary, however, contends that public policy precludes shareholders from waiving their voting rights and that the statute is therefore unconstitutional.

Earlier decisions of this court clearly support the Secretary's contention. In *Durkee v. People ex rel. Askren* (1895), 155 Ill. 354, this court invalidated a contract purporting to grant voting rights to bondholders. In *Luthy v. Ream* (1915), 270 Ill. 170, 178, this court held that stockholders could not create an irrevocable voting trust because "[t]he power to vote for directors can be exercised only by stockholders *** and they cannot be deprived or deprive themselves of this power." Further, in *People ex rel. Watseka Telephone Co. v. Emmerson* (1922), 302 Ill. 200, this court upheld the Secretary of State's refusal to permit a corporation to file articles of amendment implementing a resolution adopted by the shareholders purporting to provide for preferred stock, one condition of which shares was the waiver of the right to vote.

While we note that none of these cases involved the unanimous shareholder approval required here, it is clear from the language and reasoning of those cases that, even with their unanimous approval, the shareholders' constitutionally protected cumulative voting rights could not be restricted or eliminated. The policy underlying that reasoning was found in the public's interest in the honest control and management of corporations, embodied in the 1870 Constitution's provisions regarding cumulative voting. (*People ex*

*rel. Watseka Telephone Co. v. Emmerson* (1922), 302 Ill. 300, 310-11; *Luthy v. Ream* (1915), 270 Ill. 170, 177-78; *Durkee v. People ex rel. Askren* (1895), 155 Ill. 354, 368-69.) In each of these cases, this policy was grounded in section 3 of article 11 of the Illinois Constitution of 1870 and the statutes implementing that policy.

The public policy of a State must be sought in its constitution, legislative enactments and judicial decisions. *Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 483; *People ex rel. Watseka Telephone Co. v. Emmerson* (1922), 302 Ill. 300, 310.

> "When the sovereign power of the State has by written constitution declared the public policy of the State on a particular subject, the legislative and judicial departments of the government must accept such declaration as final. When the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired the law-making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it." (*Collins v. Metropolitan Life Insurance Co.* (1907), 232 Ill. 37, 44, quoted with approval in *Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 483.)

Voluntary agreements are to be honored unless they are clearly contrary to a policy declared by the Constitution, the legislature or court decisions or unless they are manifestly injurious to the public welfare. *Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 483.

We believe that the public policy of this State regarding cumulative voting by corporate shareholders underwent a dramatic change with the adoption of the 1970 Constitution. The cumulative voting guarantees have been deleted from the Constitution, which left the matter to the legislature, and it has amended the applicable statutes to eliminate prospectively all cumulative voting rights. Clearly, in our judgment, public policy no longer requires cumulative voting in the election of corporate directors or prohibits di-

rect or indirect limitations thereon. Thus, the underpinnings of this court's previous decisions have been substantially eroded, if not completely eliminated. This is not to say, however, that public interest in proper corporate management has diminished. Rather, it indicates that cumulative voting is no longer deemed essential for that purpose. Existing cumulative voting rights now guaranteed by section 8 of the Transition Schedule are subject to waiver under the amended statute (Ill. Rev. Stat. 1981, ch. 32, par. 157.28(c)) and, considering the profound change in public policy discussed above, we are compelled to hold that the public policy of this State no longer prohibits such action. We emphasize, however, that the waiver of such rights, at least insofar as applied to corporations in existence prior to July 1, 1971, is contingent upon the unanimous consent of the shareholders as required by the statute.

The parties have advised this court that the General Assembly has recently rewritten the law of this State governing corporations. The Business Corporation Act of 1983, Public Act 83—1025, will become effective July 1, 1984. (1983 Ill. Laws 6597.) That act purports to allow the limitation or elimination of cumulative voting by amendment to any existing corporation's articles of incorporation. (Pub. Act 83—1025, sec. 7.40(c), 1983 Ill. Laws 6597, 6636-37.) Such an amendment would not require unanimous approval if these provisions are valid. (Pub. Act 83—1025, sec. 10.20, 1983 Ill. Laws 6597, 6655-56.) We are aware, too, of the existence of recent legislation authorizing directors to fill vacancies on corporate boards (Ill. Rev. Stat. 1981, ch. 32, par. 157.36). The validity of none of those provisions is an issue in this case, and we express no opinion thereon.

For the reasons stated, we hold that section 8 of the Transition Schedule of the Illinois Constitution of 1970 guarantees to all shareholders of corporations in existence prior to July 1, 1971, the right to vote cumulatively for corporate directors, notwithstanding the acquisition dates

of such shares. However, in light of the change in the public policy of this State, such rights may be waived upon the unanimous approval of all shareholders entitled to vote at an election of directors. Section 28(c) of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.28(c)) is therefore constitutional in that the elimination or limitation of such voting rights is conditioned upon such unanimous approval. Since Roanoke has satisfied this unanimity requirement, the Secretary of State erroneously refused to approve and file the articles of amendment tendered by it.

The judgment of the circuit court is accordingly affirmed, and the Secretary of State is ordered to file the tendered articles of amendment upon payment of the appropriate filing fee as provided by law.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

I am baffled by the majority's reliance on public policy to justify its holding that the right of shareholders of pre-July 1971 (pre-1971) corporations to cumulative voting is waivable. The majority acknowledges that shareholders of pre- and post-1971 corporations are treated differently by the 1970 Constitution, and insists both that section 8 of the Transition Schedule remains a part of the Illinois Constitution to this date and that the provisions of section 8 constitute a right guaranteed to shareholders of pre-1971 corporations. To the extent that public policy regarding cumulative voting for corporate directors is reflected in the Constitution, there are two policies expressed, one relating to pre-1971, and one to post-1971, corporations.

A document as intricate as the Illinois Constitution need not reflect a single public policy. Rather, a number of different policies underlie various provisions. The separate parts are molded into a harmonious whole by the organization and structure of the final document. The policies underlying a particular provision can only be understood in

the context of other sections with which that provision interacts, and of the spirit and wording of the Constitution as a whole. To identify the public policy toward cumulative voting which is expressed by the 1970 Constitution, one must evaluate all sections of that constitution, including section 8 of the Transition Schedule.

The majority's holding that the public policy underlying the new constitutional provision which makes cumulative voting optional for shareholders of post-1971 corporations translates into waivability of the corresponding rights of shareholders of pre-1971 corporations defies both logic and the organization of the 1970 Constitution. As all parties point out here, a specific decision was made at the constitutional convention to treat the two groups of shareholders differently. The policies in favor of and opposed to cumulative voting are contradictory. The delegates concluded that one set of policies applied to the pre-1971 group, and the other set to the post-1971 group. Using one policy to explain or clarify the other is illogical, since the two policies inherently conflict.

The majority opinion loses sight of the rationale which impelled this court to hold that the shareholders' right to cumulative voting under the 1870 Constitution was not waivable. Under the majority view, because the 1970 Constitution evidences a change in public policy whereby cumulative voting is no longer considered essential to proper corporate governance, shareholders can agree by unanimous vote to waive their rights. It is axiomatic that only the holder of a right can waive it. Earlier decisions of this court have made it clear that the right to vote cumulatively for the election of directors is not a right which belongs exclusively to the shareholders. (*Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471; *Luthy v. Ream* (1915), 270 Ill. 170; *Gidwitz v. Lanzit Corrugated Box Co.* (1960), 20 Ill. 2d 208, 215; *Durkee v. People ex rel. Askren* (1895), 155 Ill. 354.) Therefore, they cannot waive that right by their

exclusive, albeit unanimous, action. As long ago as 1895, this court stated that the minority shareholders' interest and right to be represented in corporate management was tied to the success of the corporation, and that both the State and the public were also interested in effectively managed, successful corporations. (*Durkee v. People ex rel. Askren* (1895), 155 Ill. 354.) Since *Durkee,* this court has consistently reiterated the theme that shareholders exert control over the corporation through their voting rights, and that they cannot be deprived *nor deprive themselves* of those voting rights. (*Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471; *Luthy v. Ream* (1915), 270 Ill. 170; *Gidwitz v. Lanzit Corrugated Box Co.* (1960), 20 Ill. 2d 208, 215.) In other words, there are public interests involved, as well as the private interests of the minority shareholders, and those interests cannot be waived by the minority shareholders.

The majority concludes that, as a result of the 1970 Constitution, "public policy no longer requires cumulative voting *** [and] [t]hus, the underpinnings of this court's previous decisions have been substantially eroded, if not completely eliminated." (101 Ill. 2d at 327-28; see also 101 Ill. 2d at 328-29.) However, by its plain language, section 8 of the Transition Schedule to the 1970 Constitution provides that shareholders of all corporations previously organized under the laws of Illinois "shall retain their right to vote cumulatively" for directors. Nothing in the language of section 8, or of any other provision anywhere in the Transition Schedule of the 1970 Constitution, indicates that the nature of this right has been changed with respect to existing corporations. Whatever public policies are expressed in the 1970 Constitution with respect to corporations organized after July 1, 1971, the document reflects no changes in public policy with respect to previously organized corporations. Since the public policy which relates specifically to existing corporations is unchanged, a right which was un-

waivable before the effective date of the 1970 Constitution must remain unwaivable after that date. For that reason, I dissent.