LEONARD CHAVIN, Plaintiff-Appellee, v. GENERAL EMPLOYMENT ENTERPRISES, INC., *et al.*, Defendants-Appellants.—HARRY LEWIS, Plaintiff-Appellee, v. GENERAL EMPLOYMENT ENTERPRISES, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—90—3430, 1—90—3483, 1—90—3694 cons.

Opinion filed September 16, 1991.—Modified on denial of rehearing January 13, 1992.

Schiff, Hardin & Waite, of Chicago (Walter C. Greenough and Robert D. Campbell, of counsel), for appellants.

Katten, Muchin & Zavis, of Chicago, and Wechsler, Skirnick, Harwood, Halebian & Feffer, of New York, New York (Donald E. Egan, Bonita L. Stone, Stuart D. Wechsler, and Andrew D. Friedman, of counsel), for appellee Harry Lewis.

Hopkins & Sutter, of Chicago (Peter B. Freeman, Michael A. Ficaro, Christopher W. Zibart, and Russell E. Marsh, of counsel), for appellee Leonard Chavin.

JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated appeal. Defendants, General Employment Enterprises, Inc. (GEE);[1] and Herbert F. Imhoff, Herbert F. Imhoff, Jr., Walter T. Kerwin, Jr., Philip A. Piety, Anthony F. Spadaro and Howard S. Wilcox, as directors of GEE, appeal from orders entered by the trial court on November 28, 1990, and on December 6, 1990, both of which granted a preliminary injunction to plaintiffs, Leonard Chavin and Harry Lewis, enjoining defendants from implementing GEE's "Share Purchase Rights Plan" (the Plan) and from an order entered on December 20, 1990, permanently enjoining defendants from implementing the Plan.

On appeal, defendants contend that: (1) the trial court erred in holding that the Plan violated the constitutional guarantee of cumulative voting provided in the Illinois Constitution of 1870 (the 1870 Constitution) and in section 8 of the transition schedule of the Illinois Constitution of 1970 (the 1970 Constitution); and (2) the parties should be returned to the status quo that existed before the preliminary injunction was entered. While the appeal was pending, plaintiffs filed a motion with this court to dismiss defendants' consolidated appeal from the preliminary injunction on the ground that the permanent injunction rendered the appeal moot. The motion was taken with this appeal. For the following reasons, plaintiffs' motion to dismiss defendants' consolidated appeal from the preliminary injunction is denied, the judgment of the trial court is reversed, and the cause is remanded for further proceedings.

The record sets forth the following facts relevant to this appeal. GEE is a publicly traded Illinois corporation, engaged in the business of providing personnel services through a network of employment agencies in major cities in the United States and Canada. Plaintiffs Leonard Chavin and Harry Lewis are shareholders of GEE. At the time the complaints were filed, Chavin was the second largest shareholder of GEE, owning approximately 9.4% of GEE's issued and outstanding common shares.

Prior to February 12, 1990, GEE's articles of incorporation authorized the issuance of five million common shares and 100,000 prefer-

---

[1] GEE is both a named plaintiff and a named defendant in the underlying action. It is a named plaintiff to the extent that plaintiffs Leonard Chavin and Harry Lewis, GEE shareholders, filed the underlying action as a shareholders' derivative suit. GEE is a named defendant to the extent that Chavin's cause of action is brought by him individually against GEE and its directors and to the extent that Lewis' class action is brought on behalf of others similarly situated against GEE and its directors.

red shares. Pursuant to article XI, section 3, of the 1870 Constitution, in effect when GEE was incorporated, GEE's articles of incorporation and bylaws provide for the election of the six-member board of directors by cumulative votes.

Between January 19 and February 6, 1990, Chavin, together with other individuals (the Chavin Group), purchased 85,000 common shares of GEE, representing approximately 5% of the outstanding voting power of GEE. The members of the Chavin Group orally agreed to vote their common shares as Chavin requested. On February 17, 1990, Chavin filed a schedule 13D with the United States Securities and Exchange Commission, on behalf of the Chavin Group. The schedule 13D filing indicated the Chavin Group's acquisition of the common shares for investment purposes and indicated their intent to acquire an undetermined amount of additional GEE shares. Schedule 13D further stated that the Chavin Group, along with other investors, were considering whether to seek control of GEE. Between February 8, 1990, and June 22, 1990, Chavin purchased additional GEE common shares, including some owned by other members of the Chavin Group.

On February 7, 1990, defendants received a copy of the Chavin Group's schedule 13D, which disclosed that the Chavin Group had acquired 5% of GEE's outstanding common shares, intended to increase their investment and were considering whether to seek control of GEE. On February 12, 1990, the GEE board of directors unanimously adopted a "poison pill" plan, designated the "Share Purchase Rights Plan" (the Plan), which included the creation of series A junior participating preferred shares (the Preferred Shares), having voting rights of 100 votes per share. Pursuant to the Plan, the board of directors authorized the issuance of and declared a dividend distribution of one preferred share purchase right (the Right) for each common share outstanding as of February 22, 1990, including the shares owned by the Chavin Group. Each Right represented a right to purchase one $1/100$ of a preferred share and a right to purchase additional common shares of GEE stock at 50% of the current market price per common share upon terms and conditions set forth in the Rights agreement.

Plaintiffs described the operation of the Plan as follows:

"20.1 The Rights are attached to all common share certificates without distribution of any separate rights certificate and are exercisable only under specified conditions.

20.2 The Rights are exercisable only after a shareholder who had acquired 5% or more of GEE's voting power after De-

cember 31, 1989 has increased ownership to 10% or more of the voting power.

20.3 If any person acquires 5% or more of the voting power of GEE after December 31, 1989, and thereafter becomes the beneficial owner of 10% or more of the voting power, all other shareholders have the right to acquire the number of newly issued common shares of GEE having a market value equal twice the exercise price of the right, which is $12.

20.4 At any time after the Rights become exercisable for common shares, the Board of Directors may exchange each unexercised Right, other than the Rights beneficially owned by the person acquiring 10% or more of the voting power, for a newly-issued common share.

20.5 The Rights of any shareholder who acquired 5% or more of the stock after December 31, 1989, and thereafter increased ownership of voting power to 10% or more automatically become null and void. As a result, such shareholder forfeits all rights to acquire additional common shares or to exchange his Rights for common shares on the same terms and conditions accorded by the Plan to every other shareholder.

20.6 GEE may redeem the Rights at a price of one cent per Right.

21. The purpose of the Plan is to prevent and penalize the acquisition of over 10% of the common shares of GEE by any individual or group desiring to make an investment in GEE sufficient to elect one or more members of the Board of Directors. The natural and necessary effect of the Plan is to entrench the Directors in their positions by erecting a substantial barrier to the acquisition of more than 10% of GEE's common shares.

21.1 The Plan accomplishes its purposes and effects by automatically working a forfeiture of shareholder Rights, which drastically reduces the voting power and economic value of common shares of any minority shareholder who acquires 10% or more of GEE's voting power.

21.2 The Plan automatically reduces the investment of a minority shareholder regardless of whether the shareholder (a) has acquired sufficient shares to elect a single director, or (b) has either the intent or ability to acquire sufficient voting power to control GEE."

On June 15, 1990, Chavin filed a two-count verified complaint, seeking declaratory and injunctive relief. Count I alleged that the Plan violated Chavin's constitutional guarantee of cumulative voting

and sought a declaration that the Plan was invalid, injunctive relief, attorney fees and costs. Count II alleged a breach of fiduciary duty by the directors. On June 25, 1990, Lewis filed a two-count class action suit against defendants, alleging breach of fiduciary duty (count I) and violation of the constitutional guarantee of cumulative voting (count II). Lewis sought declaratory relief, injunctive relief, compensatory damages, attorney fees and costs. Subsequently, defendants moved to dismiss both complaints on the ground that they could only be brought derivatively. The trial court granted the motions to dismiss with leave for plaintiffs to file amended complaints.

Plaintiffs then filed amended complaints which included derivative action allegations. Defendants again moved to dismiss the amended complaints. However, the trial court denied the motions. Subsequently, Chavin moved for a preliminary injunction to prevent implementation of the Plan. In an order entered on November 28, 1990, the trial court granted the preliminary injunction, denied defendants' requests to stay the preliminary injunction pending appeal and to require Chavin to sell any GEE shares over 10% in the event the preliminary injunction is reversed or vacated, and consolidated Chavin's action and Lewis' action. On the same day that the order was entered, defendants filed their notice of appeal. Thereafter, on December 5, 1990, plaintiffs presented an oral motion to the trial court requesting that the November 28, 1990, order be amended to conform to the specificity requirements of section 11—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 11—101). In addition, plaintiffs sought leave to file *instanter* their motion for judgment on the pleadings as to the count alleging that the Plan was unconstitutional and sought a permanent injunction to prevent implementation of the Plan. The trial court granted plaintiffs leave to file the motion for judgment on the pleadings *instanter* and gave defendants 14 days to respond. On December 6, 1990, the trial court entered the second order granting a preliminary injunction to prevent implementation of the Plan, adding the statutorily required specificity that had not been included in the November 28, 1990, order. Defendants then filed a notice of appeal from the December 6, 1990, order and moved to consolidate the appeals.

In an order dated December 20, 1990, the trial court entered judgment in favor of Chavin (count I) and Lewis (count II), concluding that the Plan was void, invalid, unconstitutional and *ultra vires* and permanently enjoining implementation of the Plan. Defendants filed their notice of appeal from the December 20, 1990, order and moved to consolidate the appeals. Consolidation was granted.

■ Preliminarily, we shall address the issue of whether the trial court had jurisdiction to enter the December 6, 1990, order after defendants had filed their notice of appeal from the November 28, 1990, order. This issue is raised *sua sponte* by this court. Ordinarily, the filing of a notice of appeal divests the trial court of jurisdiction to enter further orders of substance in a cause. (*Dwyer v. Graham* (1982), 110 Ill. App. 3d 316, 319, 442 N.E.2d 298.) However, where the trial court's subsequent order is merely explanatory and does not change the substance of the earlier order so as to present a new case to the appellate court, the subsequent order is a valid exercise of the trial court's jurisdiction. (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 430 N.E.2d 14.) In *City of Chicago*, on August 20, 1980, the trial court entered an order permanently enjoining defendants from using their premises as an adult bookstore. Subsequently, on December 10, 1980, plaintiff filed a petition for rule to show cause, claiming that defendants were in violation of the court's order. At the hearing on the rule to show cause, the parties presented arguments as to the definition of an adult bookstore. Following the hearing, the trial court entered its order, dated January 23, 1981, explaining the order of August 20, 1980. Defendants then appealed from both orders. On appeal, one of the issues raised was whether the trial court's order of January 23, 1981, which amended its order of August 20, 1980, was void on the ground that it was an invalid exercise of judicial authority. Based on its conclusion that a trial court's post-appeal jurisdiction is not completely abrogated by the filing of a notice of appeal in all circumstances, the reviewing court held that the January 23, 1981, order was a valid order in that it merely explained the earlier order and did not present a new case to the reviewing court. 102 Ill. App. 3d at 298.

Similarly, in the present case, on November 28, 1990, the trial court entered an order granting plaintiffs' motion for a preliminary injunction as to implementation of the Plan. The order stated:

"This cause coming to be heard on Plaintiff's motion for a preliminary judgment, the Court having considered the briefs and arguments of the parties,

IT IS HEREBY ORDERED that Plaintiffs' motion is granted.

IT IS FURTHER ORDERED that Defendants' request that Chavin be required to sell any shares of GEE over 10% in the event the granting of the preliminary injunction is reversed or vacated is denied.

406

IT IS FURTHER ORDERED that this matter be consolidated with the case of *Lewis v. GEE*, 90 CH 6209 to which the preliminary injunction also applies as does the remainder of their order."

■ On December 5, 1990, recognizing that the order did not conform to the specificity requirements of section 11—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 11—101), counsel for plaintiffs requested that the court enter a more specific order. The next day, December 6, 1990, the trial court entered its second preliminary injunction order, which included the requisite specificity. As in *City of Chicago*, the December 6, 1990, order did not change the substance of the earlier order so as to present a new case. Instead, it explained the earlier order and set forth the specifics of the injunction. Accordingly, under these circumstances, we find that the trial court had jurisdiction to enter the December 6, 1990, order.

Next, we shall address plaintiffs' motion to dismiss defendants' appeal from the preliminary injunction. On December 20, 1990, two weeks after the second preliminary injunction order was entered, the trial court entered an order permanently enjoining implementation of the Plan. By that date, defendants had already filed a notice of appeal from the two earlier orders and had filed their brief with this court on the preliminary injunction issue. Plaintiffs then filed a motion with this court to dismiss defendants' consolidated appeal from the preliminary injunction order on the ground that the permanent injunction rendered the appeal moot. This court ruled that the motion would be taken with the appeal. Defendants urge this court to deny the motion on the grounds that the issues raised in the appeal from the preliminary injunction are identical to those raised in the appeal from the order of permanent injunction. For reasons other than those argued by defendants, the motion to dismiss the appeal from the preliminary injunction orders is denied.

■ A moot case is one which: (1) seeks to determine an abstract question which does not rest on existing facts or rights; (2) seeks a judgment on a pretended controversy; (3) seeks a decision in advance regarding a right that has not yet been asserted and contested; or (4) seeks a judgment upon some matter, which, when rendered, has no practical legal effect on an existing controversy. If a substantial issue or question remains in the case, the cause is not moot. *City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106.

■ In the present case, although the preliminary injunction was terminated by entry of the permanent injunction, this act did not re-

move all matters in controversy. (*In re Marriage of Grauer* (1985), 133 Ill. App. 3d 1019, 479 N.E.2d 982.) Regardless of the propriety of the permanent injunction, if the preliminary injunction should be found to have been improperly granted, defendants would be able to seek damages for injuries accrued during the period in which the preliminary injunction was in effect. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271; *Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 531 N.E.2d 989; *In re Marriage of Grauer* (1985), 133 Ill. App. 3d 1019, 479 N.E.2d 982; Ill. Rev. Stat. 1989, ch. 110, par. 11—101.

Plaintiffs' reliance on *City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106, as support for their position that the issue as to the preliminary injunction is moot is misplaced. In *Airline Canteen*, the trial court entered a temporary restraining order (TRO). The trial court then denied defendants' motion to dissolve the TRO and granted the City's motion for a preliminary injunction which provided essentially the same relief previously provided by the TRO. Defendants appealed the denial of their motion to dissolve the TRO. The reviewing court held that the issue regarding the trial court's refusal to dissolve the TRO was rendered moot by expiration of that order. The court's determination was predicated on the fact that defendants had "failed to suggest even the remote possibility of damages flowing from the grant of the TRO, *** [and] the record [did not] indicate the possibility of any damages." (64 Ill. App. 3d at 431.) Because no damages had been alleged, the *Airline Canteen* court concluded that a reversal by the reviewing court would have no practical effect on the controversy. By contrast, in the present case, defendants have alleged damages incurred during the period following entry of the preliminary injunction and preceding entry of the permanent injunction. Specifically, Chavin had purchased GEE shares in excess of the Plan's 10% maximum during that period. Therefore, if the preliminary injunction is found to have been wrongfully entered, the issue of damages remains a matter in controversy.

Next, defendants contend that the trial court erred in holding that the Plan violated the constitutional guarantee of cumulative voting provided in the 1870 Constitution and in section 8 of the transition schedule of the 1970 Constitution. Defendants argue that the Plan does not contravene the constitutional requirement that directors be elected by cumulative voting because all GEE shareholders continue to have the right to vote their shares on a cumulative basis under the Plan. In response, plaintiffs argue that the Plan was specifically designed "to take away voting power from certain shareholders" by

preventing "a minority shareholder from acquiring and voting enough shares to elect even a single member of the GEE board of directors." Plaintiffs' argument is predicated on two erroneous constructions of the 1870 Constitution and the transition schedule. First, contrary to plaintiffs' argument, the constitutional guarantee of cumulative voting does not guarantee a particular voting strength; and, second, every minority shareholder is not guaranteed the right to elect one director.

GEE was incorporated in 1962. At that time, the 1870 Constitution was in effect. Article XI, section 3, of the 1870 Constitution addressed the election of directors of corporations and provided:

> "The general assembly shall provide, by law, that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner." (Ill. Const. 1870, art. XI, §3.)

Thereafter, the 1970 Constitution was adopted, which eliminated the requirement that corporations provide for cumulative voting. In conjunction with the 1970 Constitution, a transition schedule was also adopted to ease the transition from the 1870 Constitution to the 1970 Constitution. Pursuant to section 8 of the transition schedule, shareholders of corporations organized under the 1870 Constitution shall retain their right to vote cumulatively for directors unless they elect to do otherwise.

■ Although the cumulative voting section affords a minority shareholder protection in proportion to its voting strength, it does not insure a voting strength which is precisely proportionate to stock ownership. (*Wolfson v. Avery* (1955), 6 Ill. 2d 78, 87, 94, 126 N.E.2d 701.) In *Wolfson*, plaintiff shareholder filed a complaint seeking a declaratory judgment that section 35 of the Illinois Business Corporation Act (IBCA) (Ill. Rev. Stat. 1953, ch. 32, par. 157.35), which purported to authorize the classification of directors into more than three classes and the election of one class annually, was unconstitutional and void; and that defendant company's bylaws, adopted pursuant to section 35, were unlawful. Plaintiff contended that the classification of directors and their election for staggered terms permitted by section 35 violated article XI, section 3, of the 1870 Constitution, which

guaranteed shareholders the right to cumulate their votes in the election of directors. The trial court granted plaintiffs' motion for judgment on the pleadings, and defendants appealed directly to the supreme court on the grounds that a construction of the constitution and the validity of a statute were involved.

■ In affirming the judgment of the trial court, the supreme court recognized that the actual operation of the constitutional guarantee to cumulative voting in a particular situation will depend upon three variables: "the total number of shares, the number held by the stockholder, and the number of directors." (*Wolfson*, 6 Ill. 2d at 87-88.) The court further stated that while these variables were inherent in the constitutional guarantee, a variable regarding the classification of directors by terms was not. Instead, the plain language of section 35 contemplated a right to vote cumulatively for the total number of directors at one time. Accordingly, the *Wolfson* court held that section 35 of the IBCA conflicted not only with the purpose of affording proportional representation, but also with the natural effect of the constitutional language. 6 Ill. 2d at 94-95.

Unlike the staggered term provision at issue in *Wolfson*, the Plan in the present case does not introduce a new variable factor to the constitutional guarantee of cumulative voting. Instead, the Plan affects only those variables inherent in the 1870 Constitution: the total number of shares and the number of shares held by the shareholders. Accordingly, under the *Wolfson* analysis, the Plan does not conflict with the right to cumulative voting guaranteed by the 1870 Constitution.

Moreover, the Plan's impact on the inherent variables is similar to the impact other corporate activities authorized by the IBCA have on those variables: limitation or elimination of cumulative voting rights (section 7.40(c)); elimination of shareholders' preemptive rights (section 6.50); and increase or decrease in number of directors (section 8.10). Similar to implementation of the Plan, each of these activities directly impacts on a shareholder's voting strength, but does not preclude the right to cumulative voting.

Further, the parameters of *Wolfson* were narrowly drawn by the supreme court in *Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 461 N.E.2d 1365. In *Roanoke*, plaintiff corporation amended its articles of incorporation to provide for the issuance of nonvoting shares of corporate stock and forwarded its amended articles to defendant, the Secretary of State, for filing. Defendant refused to file and approve the amendments on the ground that the amendments would contravene the constitutional guarantee to cumulative voting

provided in section 8 of the transition schedule to the 1970 Constitution. Plaintiff sought leave of the supreme court to file a petition for an original writ of *mandamus* against defendant to compel approval and filing, and simultaneously filed a complaint for judicial review in the circuit court. The supreme court denied leave to file a petition for an original writ, but ordered the circuit court to expedite the administrative review proceeding. The circuit court entered judgment for plaintiff and ordered defendant to file the amended articles as submitted. Defendant appealed directly to the supreme court.

The *Roanoke* court examined the history of cumulative voting in Illinois from the constitutional guarantee set forth in the 1870 Constitution to the elimination of the mandate in the 1970 Constitution, including the proviso set forth in section 8 of the transition schedule to the 1970 Constitution which provided that shareholders of corporations organized under the mandate of the 1870 Constitution shall retain their right to elect directors by cumulative voting. The *Roanoke* court then held that: (1) section 8 of the transition schedule applied to all shareholders of all Illinois corporations organized prior to July 1, 1971, regardless of when the shares were acquired, and (2) such rights may be waived upon the unanimous approval of all shareholders entitled to vote at the election of directors. 101 Ill. 2d at 328-29.

■■ In reaching its decision, the *Roanoke* court took special note of the shift of public policy away from cumulative voting:

"We believe that the public policy of this State regarding cumulative voting by corporate shareholders underwent a dramatic change with the adoption of the 1970 Constitution. The cumulative voting guarantees have been deleted from the Constitution, which left the matter to the legislature, and it has amended the applicable statutes to eliminate prospectively all cumulative voting rights. Clearly, in our judgment, public policy no longer requires cumulative voting in the election of corporate directors or prohibits direct or indirect limitations thereon. Thus, the underpinnings of this court's previous decisions have been substantially eroded, if not completely eliminated." (101 Ill. 2d 327-28.)

*Roanoke* lends further support to the conclusion that the Plan in the present case is not rendered unconstitutional by any impact it may have on plaintiffs' voting strength. The *Roanoke* court specifically states that public policy no longer prohibits any "direct or indirect" limitations on the right to cumulative voting. Certainly, the Plan does not directly impact on cumulative voting because that right still exists with the Plan in place. The only viable concern is the indirect impact

in the nature of voting strength, for which there has never been a constitutional guarantee. Accordingly, we conclude that the Plan is not an unconstitutional infringement on the right to cumulative voting.

Furthermore, the trial court's finding that the Plan is unconstitutional would put the constitutionality of section 6.05 of the IBCA into question. Section 6.05 authorizes poison pill plans such as the one at issue in the present case and provides, in pertinent part:

"Notwithstanding anything contained in Sections 6.10 and 7.40 of this Act, except as otherwise provided in the articles of incorporation, a corporation may create and issue, whether or not in connection with the issue and sale of its shares or bonds, rights or options entitling the holders thereof to purchase from the corporation, upon such consideration, terms and conditions as may be fixed by the board, shares of any class or series, whether authorized but unissued shares, previously existing treasury shares or shares to be purchased or acquired, notes of the corporation or assets of the corporation. The terms and conditions of such rights or options may include, without limitation, restrictions or conditions that preclude or limit the exercise, transfer or receipt of such rights or options by any person or persons owning or offering to acquire a specified number or percentage of the outstanding common shares or other securities of the corporation, or any transferee or transferees of any such person or persons, or that invalidate or void such rights or options held by any such person or persons or any such transferee or transferees. Any such rights or options heretofore created or issued prior to the effective date of this amendatory Act of 1989 which are in conformity with this Section 6.05 and are not otherwise in conflict with other provisions of this Act, are hereby ratified. Nothing in this Section 6.05 shall affect the rights and fiduciary obligations of the board of directors or a corporation in the creation and issuance of such rights or options, or in the taking or failing to take any action with respect to such rights or options." (Ill. Rev. Stat. 1989, ch. 32, par. 6.05.)

Because there is a presumption in favor of the constitutionality of legislative enactments (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 457 N.E.2d 440), any indirect attack on the constitutionality of section 6.05 should be closely scrutinized.

■ Accordingly, based upon the application of *Wolfson v. Avery* (1955), 6 Ill. 2d 78, 126 N.E.2d 701, and *Roanoke Agency, Inc. v. Ed-*

*gar* (1984), 101 Ill. 2d 315, 461 N.E.2d 1365, to the facts at bar, the plain language of section 6.05 of the IBCA, and the change in public policy regarding cumulative voting, we conclude that the Plan is neither unconstitutional nor *ultra vires*. Therefore, the trial court abused its discretion in granting plaintiffs' motion for judgment on the pleadings and in enjoining implementation of the Plan.

■ We further find that the trial court abused its discretion in the manner in which the permanent injunction was entered. At the December 5, 1990, hearing on plaintiffs' oral motion to modify the November 28, 1990, preliminary injunction order, plaintiffs also sought leave to file *instanter* their motion for judgment on the pleadings, predicated on the trial court's finding that the Plan was unconstitutional. Thus, before the November 28, 1990, preliminary injunction order was even modified to include the required specificity, plaintiffs sought a permanent injunction based on the specific findings. The trial court granted plaintiffs leave to file the motion *instanter* and gave defendants 14 days to respond. In light of the fact that the November 28, 1990, order lacked the requisite specificity, a fact admitted to by the trial court as well as by counsel for plaintiffs, and the fact that there was no evidence of an emergency situation requiring an expedited permanent injunction, we find that the trial court abused its discretion in entering a permanent injunction approximately two weeks after the first preliminary injunction order was clarified.

●■ Finally, defendants contend that the parties should be returned to the status quo that existed before the preliminary injunction was entered. As soon as the improper November 28, 1990, preliminary injunction order was entered, Chavin purchased GEE stock, increasing his holding beyond the 10% trigger of the Plan. Defendants request that this court require Chavin to divest himself of the amount of GEE stock he owns in excess of the 10% threshold and enjoin the voting of such stock. However, defendants offer no legal authority to support this request. Accordingly, this issue is waived for review on this appeal. 134 Ill. 2d R. 341(e).

For the aforementioned reasons, plaintiffs' motion to dismiss defendants' consolidated appeal from the preliminary injunction is denied, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.