2020 IL App (2d) 200225
Nos. 2-20-0225 & 2-20-0226 cons.
Opinion filed August 7, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Tr. A. and Ty. A., Minors | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| | ) | |
| | ) | Nos.  18-JA-46 |
| | ) | 18-JA-47 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Ronald G. Matekaitis, |
| Appellee v. Patricia N., Respondent-Appellant).) | | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1        Respondent, Patricia N., appeals from an order of the circuit court of De Kalb County, finding that she was an unfit parent and that it was in the best interests of her minor children, Tr. A. and Ty. A, that respondent's parental rights be terminated. On appeal, respondent argues that the trial court failed to make sufficient findings of fact to support its determinations as to unfitness and best interests. Alternatively, respondent argues that the trial court erred in expediting the termination of her parental rights. For the reasons set forth below, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3 Respondent is the biological mother of Tr. A., born March 24, 2015, and Ty. A., born April 8, 2017. The parental rights of Tr. A.'s and Ty. A.'s biological father also were terminated but are not at issue in this appeal.

¶ 4 On August 21, 2018, the police were contacted because of concerns regarding respondent's care of Tr. A.'s and Ty. A.'s older sister, Ta. A. (born December 29, 2009). Ta. A. has cerebral palsy, epilepsy, and global developmental delay. She is also nonverbal and requires a G-tube for feeding and a wheelchair. When the police arrived at the home, respondent became agitated and violent, and she fought with her boyfriend's brother because he called emergency medical services. Ta. A. was lying in her own urine and feces and was covered in vomit. It appeared that her diaper had not been changed in days. The entry point of Ta. A.'s feeding tube was infected, and she appeared malnourished. Her stomach was distended, and she appeared to be anorexically thin. Ta. A. was transported to a hospital. In addition to severe malnourishment and rotting teeth, she had multiple open wounds with maggots in the wounds. There was a severe wound between her anus and vagina from not being moved, and she had multiple bed sores on her body, including a stage-two ulcer and a stage-four genital ulcer. Respondent was charged with felony neglect.

¶ 5 When the Department of Children and Family Services (DCFS) became involved in the case, Tr. A. and Ty. A. had three siblings—Ta. A., Tan. A. (born January 15, 2008), and R.A. (born January 3, 2009). All of the children were in respondent's care. Also, while the case was pending, respondent gave birth to J.W. (born December 25, 2018). Since February 2018, respondent had six indicated reports of abuse and neglect.

¶ 6 Relevant to this appeal, on August 22, 2018, the State filed three-count petitions for adjudications of wardship with respect to Tr. A. and Ty. A.[1] The petitions alleged that Tr. A. and Ty. A. were neglected in the following ways: (1) respondent failed to provide proper medical and remedial care in that their sibling was severely malnourished and had "cuts, bruises, welts, abrasions and oral injuries, severe wounds on her body, including a stage four ulcer and a stage two ulcer, infected feeding tube, and or bed sores"; (2) their parents failed to provide remedial care in that they failed to provide Tr. A.'s and Ty. A.'s sibling with appropriate supervision, a clean home, or food in the home; and (3) Tr. A.'s and Ty. A.'s environment was injurious to their welfare in that respondent failed to cooperate with her "agreed to intact case from August 2, 2018, and that [respondent] has failed to cooperate with services." The State subsequently amended the adjudication petitions to add two counts alleging that Tr. A.'s and Ty. A.'s environment was injurious to their welfare in that their father was "unwilling to care for children and has informed DCFS to [*sic*] same" and was "unable to care for children and cannot appropriately provide for the minors."

¶ 7 A shelter-care hearing on the adjudication petitions was held on August 23, 2018. The trial court entered orders on that date, appointing counsel to represent respondent and appointing a guardian *ad litem* (GAL) to represent Tr. A. and Ty. A. The trial court found probable cause to believe that Tr. A. and Ty. A. were neglected. It also found that there was an immediate and urgent necessity to remove Tr. A. and Ty. A. from the home, despite reasonable efforts to keep them in the home, and that leaving Tr. A. and Ty. A. in the home was contrary to their health, welfare, and

---

[1] Respondent's parental rights with respect to her other children are not at issue in this appeal. We discuss the facts as they pertain to Tr. A. and Ty. A.

safety. The court placed temporary custody of Tr. A. and Ty. A. with DCFS and provided for supervised visitation to be monitored by DCFS. Tr. A. and Ty. A. were placed in the care of a relative.

¶ 8     On September 12, 2018, DCFS implemented a sibling visitation and contact plan, which included a no-contact order between respondent and all of her children until further notice. Subsequently, on October 26, 2018, the trial court entered an order allowing supervised visitation for respondent at DCFS's discretion. Respondent initially was allowed weekly supervised visitation. Her supervised visitation was later reduced to twice a month and then to once a month.

¶ 9     The trial court entered adjudicatory orders on February 22, 2019. Respondent stipulated that the State could meet its burden on all counts of the amended adjudication petitions except count I. On the basis of the stipulation, the trial court found Tr. A. and Ty. A. neglected in that they suffered from a lack of support, education, or remedial care (705 ILCS 405/2-3(1)(a) (West 2018)) and were in an environment that was injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2018)).

¶ 10     On March 29, 2019, the trial court held a dispositional hearing. The trial court entered dispositional orders, finding, after considering the evidence and the dispositional report, that respondent was unfit, unable, and unwilling to care for, protect, train, educate, supervise, or discipline Tr. A. and Ty. A. and that placement with respondent was contrary to Tr. A.'s and Ty. A.'s health, safety, and best interests. The trial court further found that reasonable efforts and appropriate services aimed at family reunification could not prevent or eliminate the need to remove Tr. A. and Ty. A. from the home and that leaving Tr. A. and Ty. A. in the home was contrary to their health, welfare, and safety. The trial court adjudicated Tr. A. and Ty. A. neglected, made them wards of the court, and placed custody and guardianship with DCFS. In the orders, the

trial court also noted that respondent was not present and denied her motion to continue the dispositional hearing.

¶ 11    Following a permanency-review hearing, the trial court entered permanency orders on June 28, 2019. The trial court found, after considering the DCFS service plan and report and the testimony, that the appropriate permanency goal was for Tr. A. and Ty. A. to return home within 12 months but that respondent had not made reasonable efforts toward the goal. The trial court ordered that custody and guardianship of Tr. A. and Ty. A. remain with DCFS. The trial court also ordered that respondent comply with the terms of the service plan and correct the conditions that required Tr. A. and Ty. A. to be in DCFS's care or she would risk termination of her parental rights.

¶ 12    On December 12, 2019, and December 13, 2019, the State filed "Motion[s] For Expedited Termination of Parental Rights And Appointment Of A Guardian With Power To Consent To Adoption" (motions to expedite termination of parental rights) with respect to Ty. A. and Tr. A., respectively. The motions are identical, with the exception of the identification of Ty. A. and Tr. A. The State alleged that respondent was an unfit parent on seven counts: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to Tr. A.'s and Ty. A.'s welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) repeated or continuous and substantial neglect of Tr. A. and Ty. A. (750 ILCS 50/1(D)(d) (West 2018)); (3) extreme and repeated or continuous cruelty to Tr. A. and Ty. A. (750 ILCS 50/1(D)(e) (West 2018)); (4) failure to protect Tr. A. and Ty. A. from conditions within the environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2018)); (5) commission of misconduct toward Tr. A. and Ty. A. (750 ILCS 50/1(D)(h) (West 2018)); (6) depravity (750 ILCS 50/1(D)(i) (West 2018)); and (7) repeated or continuous failure to provide Tr. A. and Ty. A. with adequate food, clothing, or shelter although physically and financially able

(750 ILCS 50/1(D)(*o*) (West 2018)). The State also alleged that termination of respondent's parental rights was in the best interests and welfare of Tr. A. and Ty. A.

¶ 13    As grounds to expedite termination of respondent's parental rights, the State alleged aggravating circumstances. Namely, the State alleged that Tr. A. and Ty. A., or another child of respondent, were tortured or chronically abused (705 ILCS 405/1-2(1)(a)(i)(B), (C) (West 2018)), and that this was an extreme case in which respondent's incapacity to care for Tr. A. and Ty. A., along with a poor prognosis for rehabilitation due to respondent's lack of engagement in services, justified expedited termination (705 ILCS 405/1-2(1)(c) (West 2018)).

¶ 14    Following a permanency-review hearing on December 20, 2019, the trial court entered an order finding that respondent had made neither reasonable and substantial progress nor reasonable efforts toward Tr. A.'s and Ty. A.'s return home. The trial court further found that the appropriate permanency goal was substitute care pending termination of parental rights.

¶ 15    On February 28, 2020, the trial court conducted a termination-of-parental-rights hearing with respect to Tr. A. and Ty. A. (and their siblings Ta. A., Tan. A., and R.A.); respondent was not present.[2] At the start of the unfitness phase, the DCFS service plans, its investigative packet, and Ta. A.'s medical records were admitted into evidence. The State called as a witness Rachel Williams, a permanency specialist with DCFS and the caseworker assigned to the children. Williams testified regarding the mental health services that were recommended for respondent. In October 2018, respondent was referred for counseling. She attended 4 of 13 recommended sessions and was unsatisfactorily discharged from the counseling in May 2019. Meanwhile, a psychological evaluation was recommended. The evaluation was scheduled three times but respondent never

_____

[2] We note that the transcript of the termination hearing is the only transcript in the record.

attended. A psychiatric evaluation also was recommended, to obtain treatment for depression, but respondent did not follow through with the evaluation. In light of respondent's history of substance abuse, positive drug screens, and failure to appear for services, an evaluation for substance abuse was recommended. The evaluation was scheduled for May 2019, and transportation was arranged, but respondent failed to appear.

¶ 16    Moreover, Williams testified that, in October 2018, respondent was referred for parent education. She attended 6 of 10 scheduled group sessions and was recommended for participation in the next parenting group session, which began in July 2019. However, she failed to attend. Respondent attended four individual sessions for parent education and four parent coaching observations but failed to make satisfactory progress and failed to maintain communication with the provider. She was discharged from the parenting services in October 2019 but reinitiated the services in February 2020—shortly before the termination hearing. Williams further testified that respondent was referred for habilitation services to address issues with "cleanliness in the home, providing stability, finding and maintaining income and the means to meet the needs of her children." Respondent attended 4 of 13 recommended sessions, did not reengage in those services, and had been homeless since June 2019.

¶ 17    The State questioned Williams as to respondent's progress toward the return of her children:

> "Q. Over the course of the entire time that this case has been open and your review of the file[,] has [respondent] made reasonable progress towards correcting the conditions that brought the children into care?
>
> A. No, she has not.

Q. Is she ready to have one or more of the children brought into care returned to her at this time?

A. No.

Q. Is it possible to a reasonable degree of certainty consistent with your training and expertise possible [*sic*] to return them within the next six months?

A. No.

Q. The next year?

A. No.

Q. Could it take up to two years?

A. It could."

¶ 18    As for respondent's supervised visitation with the children, Williams testified that respondent was inconsistent with the initial weekly visitation. Her visitation decreased to twice a month and then to once a month. However, beginning in December 2019 (when the permanency goal was changed to substitute care pending termination of parental rights), respondent maintained weekly visitation with the children. Williams also testified that respondent brought gifts for the children sporadically.

¶ 19    On cross-examination, Williams acknowledged that homelessness is a barrier to completion of services but stated that DCFS provided respondent with transportation to services. Respondent was employed at Target from June 2019 to August 2019 and subsequently "was close to having a job but then the transportation to the job fell through." Accordingly, Williams testified, the lack of transportation had been an impediment to employment but not to attendance at services, since DCFS provided transportation for the services.

¶ 20    Following closing argument, the trial court found that the State met its burden of proving respondent unfit by clear and convincing evidence as to each of the allegations in the motions to expedite termination of parental rights. The trial court noted that it "heard the testimony of the witness, considered the exhibits that have been admitted into evidence, considered those non-hearsay portions of the documents that are part of the court record including previous dispositional reports, previous permanency reports, previous adjudication reports as well." The trial court also stated that it was

"well familiar with the treatment of all the minors [who] are before the [c]ourt including [Ta. A.] and [the] horrific conditions [that] *** the children generally and [Ta. A.] specifically found themselves in as a direct result of the conduct of [respondent] specifically in this case and secondarily as it related to [the father]."

¶ 21    The trial court found that, although respondent had engaged in some services throughout the history of this case, she "stopped participating in those services last year and only recently indicated a willingness to re-engage in some of those services." Moreover, the trial court found, respondent "hasn't completed any of the services that she was directed to complete pursuant to her service plan." Rather, she has "done partial completion of some, failed to complete any and is not currently significantly engaged in any services." Accordingly, the trial court determined that respondent was an unfit parent as to the children.

¶ 22    The case proceeded that day to the best-interests phase of the hearing, as to Tr. A. and Ty. A. Williams testified that Tr. A. and Ty. A. remained in foster care with their relative, who was willing to provide permanency through adoption. Williams stated that Tr. A. and Ty. A. have a bond with their foster mother and are part of the extended family. Tr. A. and Ty. A. continue to see other relatives, as the foster mother is the "hub" of the family. As Williams testified:

"They all get together. Everybody goes to [the foster mother's house]. Everybody gets their hair done at [the foster mother's house.] They go there for holidays. The older siblings [(R.A. and Tan. A.)] are actually currently placed with [the foster mother's son] so they continue to have regular visitation. She has them also attend church. The church bus picks them up, which is another opportunity where they continue to see their older siblings, cousins, et cetera."

¶ 23 Williams testified that Tr. A. and Ty. A. are "well cared for," with their educational and medical needs met. Williams further testified that Tr. A. and Ty. A. are attached to their foster mother. She explained: "They will cuddle with her, give her hugs. Now they respond well to her redirection. She's calm and patient with them. If one of them is upset, she will go and comfort them." The foster mother celebrates birthdays and holidays with Tr. A. and Ty. A. and gives them gifts. Williams further testified that respondent had been inconsistent with visitation and that the children Tr. A. and Ty. A. did not question it when their visitation with respondent was reduced. Rather, Tr. A. and Ty. A. consider the foster placement their home. As Williams testified: "This is their family. They're comfortable there. They're doing well there."

¶ 24 The trial court found, based on Williams's testimony, that it was in the best interests of Tr. A. and Ty. A. that respondent's parental rights be terminated. The trial court stated:

"All the needs of the minor children are being met in their current placement, [they] feel loved, they're bonded. Description of their family life is that it is, in fact, just that, a family and that's how the children view their current caregivers. Based on that[,] the [c]ourt believes that we should proceed at this point in time to permanency to change the goal then to adoption."

The trial court considered the evidence presented during the unfitness and best-interests phases of the hearing and found that the goal of adoption was in the best interests of Tr. A. and Ty. A. At the conclusion of the hearing, the State requested leave to file "a typewritten termination order or the two minors we were able to proceed on today." The trial court granted the request.

¶ 25    On February 28, 2020, following the termination hearing, the trial court entered a handwritten order. The handwritten order provided that the State had "proven the allegations in the petition by clear and convincing evidence," that respondent was "unfit as alleged in all counts," and that Ta. A. "was tortured, and the torture was inflicted by [respondent]." Moreover, the order provided that it was in the best interests of Tr. A. and Ty. A. to terminate respondent's parental rights and to change the goal to adoption. On March 16, 2020, respondent filed separate notices of appeal in Tr. A.'s and Ty. A.'s cases from the February 28, 2020, judgment.

¶ 26    Subsequently, the trial court issued separate typewritten orders in Tr. A.'s and Ty. A.'s cases. The orders are identical, with the exception of the identification of the children. The typewritten orders stated that they were "[e]ntered this 10th day of March, 2020." However, the orders were file-stamped on March 25, 2020. In the March 25, 2020, typewritten orders, the trial court stated that respondent was defaulted for failure to appear and it set forth findings with respect to respondent's unfitness, the best interests of Tr. A. and Ty. A., and a basis for expedited termination of parental rights.[3]

---

[3] The State's motions to expedite termination of parental rights and the March 25, 2020, orders incorrectly reflect Tr. A.'s date of birth as January 3, 2009, rather than March 24, 2015, and incorrectly reflect Ty. A.'s date of birth as March 24, 2015, rather than April 8, 2017.

¶ 27    Regarding respondent's unfitness, the March 25, 2020, orders provide: "The [c]ourt having heard and considered the relevant and admissible evidence presented at [the] hearing, relevant statutory provisions[,] and the arguments of counsel, the [c]ourt finds by clear and convincing evidence that [respondent] is an unfit person to have a child in that" respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to Tr. A.'s and Ty. A.'s welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) was extremely or repeatedly cruel to the sibling of Tr. A. and Ty. A. (750 ILCS 50/1(D)(e) (West 2018)); (3) committed misconduct toward Tr. A. and Ty. A. (750 ILCS 50/1(D)(b) (West 2018)); (4) failed to protect Tr. A. and Ty. A. from conditions within their environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2018)); (5) failed to make reasonable progress toward the return of Tr. A. and Ty. A. during any nine-month period following the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2018)); (6) committed misconduct toward Tr. A. and Ty. A. (750 ILCS 50/1(D)(h) (West 2018)); and (7) was depraved (750 ILCS 50/1(D)(i) (West 2018)).

¶ 28    Regarding the best interests of Tr. A. and Ty. A., the trial court found that, "having heard and considered the relevant and admissible evidence presented at [the] hearing, relevant statutory provisions[,] and the arguments of counsel," it was in the best interests and welfare of Tr. A. and Ty. A. that the "parental rights and residual parental rights of [respondent and the father] be terminated with respect to [Tr. A. and Ty. A.], and that [DCFS] remain legal guardians and custodians of [Tr. A. and Ty. A.] with the power to consent to the adoption of [Tr. A. and Ty. A.]."

¶ 29    Moreover, in the March 25, 2020, orders, the trial court found that expedited termination of respondent's parental rights was appropriate in that reasonable efforts at reunification were provided but were unsuccessful. The trial court stated that there were aggravating circumstances, including that another child of respondent's was chronically abused and tortured, with the torture

- 12 -

inflicted by respondent, and that this was an extreme case of "the parent's incapacity to care for the minor[s], with a poor prognosis for rehabilitation due to a lack of engagement in services." Accordingly, the trial court ordered that "the parental rights and residual parental rights of [respondent] are permanently terminated with respect to [Tr. A. and Ty. A.]."

¶ 30    On our own motion, this court consolidated respondent's appeals in Tr. A.'s and Ty. A.'s respective cases.

¶ 31                                    II. ANALYSIS

¶ 32    The Juvenile Court Act of 1987 (Act) sets forth a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/1-1 *et seq.* (West 2018). Initially, the State must establish, by clear and convincing evidence, that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). See 705 ILCS 405/2-29(2), (4) (West 2018); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the trial court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the child's best interests. See 705 ILCS 405/2-29(2) (West 2018); *In re D.T.*, 212 Ill. 2d 347, 367 (2004). We will not disturb a trial court's findings with respect to parental unfitness or the child's best interests unless the findings are against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. A decision is against the manifest weight of the evidence " 'only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence.' " *Id.* ¶ 30 (quoting *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16).

¶ 33    Respondent's appeal centers around her challenge to the trial court's determinations as to unfitness and best interests. As a preliminary matter, however, she contends that the trial court lacked jurisdiction to enter the March 25, 2020, orders in light of the notices of appeal she filed on

March 16, 2020, from the February 28, 2020, order. Consequently, respondent contends, the March 25, 2020, orders should be stricken. Regardless, respondent argues, the trial court failed to make sufficient factual findings in either order to support the termination of her parental rights. Alternatively, respondent argues that the trial court erred in expediting the termination of her parental rights.

¶ 34                                    A. Jurisdiction

¶ 35    Respondent's position is that the trial court lacked jurisdiction to enter the March 25, 2020, orders, because it was divested of jurisdiction to enter any further substantive orders once she filed her notices of appeal on March 16, 2020. Initially, we again point out that, although the March 25, 2020, orders included a notation that they were "[e]ntered this 10th day of March, 2020," the orders were file-stamped on March 25, 2020. The file-stamped date is the effective date of the orders. See *People v. Hansen*, 2011 IL App (2d) 081226, ¶¶ 7-8.

¶ 36    The State's position is that the trial court had jurisdiction to enter the March 25, 2020, orders, because the February 28, 2020, order was not a final order. Rather, according to the State, the March 25, 2020, orders were "the only order[s] that specifically reflect[ ] that respondent's parental rights were terminated and thus, [they] appear[ ] to be the final order[s] for purposes of appeal under Illinois Supreme Court Rules 272 and 303." See Ill. S. Ct. R. 272 (eff. Jan. 1, 2018); R. 303 (eff. July 1, 2017). Thus, the State argues, respondent's notices of appeal were premature and should be treated as filed after the entry of the March 25, 2020, orders. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) (providing, *inter alia*, that "[a] notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order").

¶ 37    The State's reliance upon Rule 272 is misplaced. Rule 272 provides in relevant part,

"If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge *** , the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." Ill. S. Ct. R. 272 (eff. Jan. 1, 2018).

¶ 38    The procedure set forth in Rule 272 is not what happened in this case. Here, at the conclusion of the February 28, 2020, termination hearing, the trial court set forth its oral ruling as to respondent's unfitness. Although the trial court granted the State's request to provide a typewritten order, the trial court did not "require[ ] the submission of a form of written judgment to be signed by the judge" as set forth in Rule 272. *Id.* Rather, the trial court entered a handwritten order on February 28, 2020, providing that the State had met its burden of proving by clear and convincing evidence that respondent was unfit and that it was in the best interests of Tr. A. and Ty. A. to terminate respondent's parental rights and to change the goal to adoption. Respondent's parental rights were then terminated.

¶ 39    Thus, the issue is not that respondent's notice of appeal was premature. Respondent timely filed notices of appeal on March 16, 2020, from the February 28, 2020, order. The issue is whether the trial court retained jurisdiction to enter the March 25, 2020, orders. Generally, the filing of a notice of appeal divests the trial court of jurisdiction to enter any further substantive orders. *Chavin v. General Employment Enterprises, Inc.*, 222 Ill. App. 3d 398, 405 (1992). However, "[o]rders entered after the filing of the notice of appeal are valid if the substantive issues on appeal are not altered so as to present a new case to the appellate court." *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 25. Accordingly, a subsequent order that is merely explanatory and

does not change the substance of the earlier order is a valid exercise of the trial court's jurisdiction. *Chavin*, 222 Ill. App. 3d at 405. Respondent argues that the trial court substantively revised the February 28, 2020, order in its March 25, 2020, orders by setting forth findings as to respondent's unfitness that were distinct from the previous findings. We disagree under the facts of this case.

¶ 40　At the conclusion of the February 28, 2020, termination hearing, the trial court set forth its oral ruling, based upon its consideration of the evidence, that the State had met its burden of proving respondent unfit by clear and convincing evidence as to each of its allegations. In doing so, the trial court noted its familiarity with respondent's treatment of the children and the "horrific conditions" in which respondent's conduct placed the children, as well as respondent's failure to complete the services set forth in the service plan. While the trial court granted the State's request to provide a typewritten order, the trial court also entered a handwritten order on February 28, 2020, providing that the State had met its burden of proving the allegations in the petition by clear and convincing evidence that respondent was "unfit as alleged in all counts"—referring to the seven counts alleged in the State's motions to expedite termination of parental rights.

¶ 41　In the March 25, 2020, typewritten orders, the trial court likewise found by clear and convincing evidence that respondent was unfit and it specifically set forth seven enumerated statutory grounds upon which the unfitness determination was based—seemingly tracking the seven counts alleged in the State's motions to expedite termination of parental rights. Respondent, however, points to distinctions between the allegations in the State's motions and the enumerated grounds set forth in the March 25, 2020, orders. Namely, (1) the State alleged repeated or continuous and substantial neglect of Tr. A. and Ty. A. (count II) and repeated or continuous failure to provide Tr. A. and Ty. A. with adequate food, clothing, or shelter although physically and financially able (count VII), yet in the March 25, 2020, orders, the trial court did not include

findings with respect to these allegations; (2) the State alleged extreme or repeated cruelty to Tr. A. and Ty. A. (count III), yet in the March 25, 2020, orders, the trial court found extreme or repeated cruelty to their sibling; (3) the State alleged the commission of misconduct toward Tr. A. and Ty. A. pursuant to one statutory subsection (count V), yet in the March 25, 2020, orders, the trial court found the commission of misconduct toward Tr. A. and Ty. A. pursuant to two statutory subsections; and (4) the State did *not* allege that respondent failed to make reasonable progress toward the return of Tr. A. and Ty. A. during any nine-month period following the neglect adjudication, yet in the March 25, 2020, orders, the trial court found that respondent failed to make reasonable progress toward the return of Tr. A. and Ty. A. during any nine-month period following the neglect adjudication.

¶ 42 However, the distinctions apparent in the March 25, 2020, orders did not change the substance of the February 28, 2020, ruling so as to present a new case to this court. See *Chavin*, 222 Ill. App. 3d at 405. In both the February 28, 2020, and the March 25, 2020, orders, the trial court ruled that the State met its burden of proving respondent unfit by clear and convincing evidence. In the March 25, 2020, orders, the trial court provided further explanation with respect to its finding in the February 28, 2020, order that respondent was "unfit as alleged in all counts." Thus, while we highlight the importance of precision in such an order, we cannot say that the March 25, 2020, orders substantively revised the prior order so as to present a new case on review.

¶ 43 This is particularly so where the State's motions to expedite termination of respondent's parental rights included seven counts, with each count alleging that respondent was an unfit parent on a separate statutory ground. Only one statutory ground is necessary to prove that a parent is unfit. See 750 ILCS 50/1(D) (West 2018). Therefore, "[w]hen parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, the reviewing court need not

consider additional grounds for unfitness cited by the trial court." *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004). Rather, we may affirm the trial court's judgment where the evidence supports a finding of unfitness as to any one of the alleged grounds. See *In re Nicholas C.*, 2017 IL App (1st) 162101, ¶ 20.

¶ 44　Respondent's argument that the trial court substantively revised the February 28, 2020, order in the March 25, 2020, orders pertains to only counts II, III, V, and VII of the State's motions to expedite termination of respondent's parental rights. The State, however, maintains that, although it sufficiently proved all grounds alleged, we may affirm on the statutory grounds set forth in the remaining counts—count I (failure to maintain a reasonable degree of interest, concern, or responsibility as to Tr. A.'s and Ty. A.'s welfare), count IV (failure to protect Tr. A. and Ty. A. from conditions within the environment injurious to their welfare), and count VI (depravity). We agree, as the record demonstrates no basis upon which to conclude that the trial court's determinations with respect to respondent's unfitness on these counts were against the manifest weight of the evidence.

¶ 45　Moreover, as detailed below, we hold that the trial court's determinations as to respondent's unfitness were not against the manifest weight of the evidence, even without consideration of the explanatory findings set forth in the March 25, 2020, orders. Accordingly, respondent's argument that the trial court lacked jurisdiction to enter the March 25, 2020, orders does not provide a basis for relief in this court.

¶ 46　　　　　　　　　　B. Unfitness

¶ 47　Respondent argues that the trial court failed to make sufficient factual findings to support the trial court's determinations as to parental unfitness. Respondent likens this case to *In re B'Yata I.*, 2013 IL App (2d) 130558. There, the trial court found that the State met its burden of proving

the respondent unfit by clear and convincing evidence, yet the court made no oral or written factual findings to support its unfitness determination. *Id.* ¶ 34. We held that the trial court's failure to set forth a factual basis for its decision precluded any meaningful appellate review of the determination. *Id.* We also pointed out that our review was impeded by the lack of factual findings, as the evidence was not " 'overwhelming and undisputed.' " *Id.* ¶¶ 33, 41 (quoting *In re Richard H.*, 376 Ill. App. 3d 162, 166 (2007)).

¶ 48    In contrast, here, even without consideration of the findings set forth in the March 25, 2020, orders, the trial court's findings as to respondent's unfitness were sufficient to allow meaningful appellate review. Following the unfitness phase of the termination proceeding on February 28, 2020, the trial court made several oral findings, including that it was "well familiar with the treatment of all the minors" and the "horrific conditions" in which the children found themselves as a direct result of respondent's conduct. The trial court found that respondent had only recently indicated a willingness to reengage in services after her participation in them had ceased the prior year. The trial court further found that respondent had not "completed any of the services that she was directed to complete pursuant to her service plan." Rather, she had "done partial completion of some, failed to complete any and is not currently significantly engaged in any services." In addition to its oral findings, the trial court entered the handwritten order on February 28, 2020, finding that Tr. A.'s and Ty. A.'s sibling "was tortured, and the torture was inflicted by [respondent]." Accordingly, respondent presents no persuasive basis upon which to hold that the trial court failed to make sufficient factual findings to support its unfitness determinations.

¶ 49    Moreover, unlike in *B'Yata I.*, there was ample evidence in the record to support the trial court's determinations as to respondent's unfitness. As discussed, only one statutory ground is necessary to prove that a parent is unfit. See 750 ILCS 50/1(D) (West 2018). We turn to the

statutory grounds set forth in counts I, IV, and VI of the State's motions to expedite termination of parental rights, as the State maintains that we may affirm on each of these grounds.

¶ 50    Count I alleged failure to maintain a reasonable degree of interest, concern, or responsibility as to Tr. A.'s and Ty. A.'s welfare. 750 ILCS 50/1(D)(b) (West 2018). A parent is not fit merely because the parent has shown some interest in or affection for a child. See *In re M.J.*, 314 Ill. App. 3d 649, 657 (2000). Rather, the interest, concern, and responsibility must be objectively reasonable. *Id.* Failure of a parent to comply with the directives of a service plan "is tantamount to objectively unreasonable interest, concern, or responsibility as to the child's welfare." *Id.*

¶ 51    Here, the service plans and Williams's testimony at the unfitness hearing established respondent's failure to comply with the goals set forth in her service plans. The goals for respondent included to learn protective factors to keep her children safe, cooperate with DCFS and service providers, demonstrate a renewed interest in meeting her children's needs, and refrain from drug use. Respondent repeatedly received an "unsatisfactory" rating for these goals. Respondent was referred for counseling and was unsatisfactorily discharged from the services after attending 4 of the 13 recommended sessions. A psychological evaluation was recommended and scheduled three times, but respondent never attended. She also failed to follow through with a recommended psychiatric evaluation. In light of respondent's substance abuse, positive drug screens, and failure to appear for services, an evaluation for substance abuse was recommended. Transportation was arranged, but respondent failed to appear. While respondent initially attended parenting classes, she ultimately failed to make satisfactory progress, and her visitation with the children was inconsistent. Accordingly, in light of the evidence in the record, there is no basis upon which to

conclude that the trial court's findings of unfitness on count I were against the manifest weight of the evidence.

¶ 52    Count IV alleged failure to protect Tr. A. and Ty. A. from conditions within the environment injurious to their welfare. 750 ILCS 50/1(D)(g) (West 2018). A court may consider the initial circumstances that led to the child's removal, although it may not consider facts that occurred after the child was in DCFS custody. See *In re C.W.*, 199 Ill. 2d 198, 218-20 (2002). Here, as discussed, the facts that led to Tr. A.'s and Ty. A.'s removal from respondent's care were egregious. As the trial court noted, respondent's conduct placed the children in "horrific conditions." Moreover, the record reflected respondent's failure to understand the severity of the prior neglect. There is simply no evidence in the record upon which to conclude that the trial court's findings of unfitness on this count were against the manifest weight of the evidence.

¶ 53    Count VI alleged depravity. 750 ILCS 50/1(D)(i) (West 2018). Depravity has been defined as " 'an inherent deficiency of moral sense and rectitude.' " *In re J.A.*, 316 Ill. App. 3d 553, 561 (2000) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). "Depravity of a parent may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality." *In re Dawn H.*, 281 Ill. App. 3d 746, 757 (1996). The record demonstrates that Tr. A. and Ty. A. were found living in the home under horrendous conditions. As the State argued in closing at the unfitness-phase of the termination hearing, Tr. A.'s and Ty. A.'s sibling was denied "the bare minimum of humanity." The record demonstrates that, rather than addressing the severity of her conduct, respondent avoided counseling and treatment, resisted assistance, lacked stability in housing or income, and failed to take steps to correct those conditions. Again, there is no evidence in the record upon which to conclude that the trial court's findings of unfitness on this count were against the manifest weight of the evidence.

¶ 54    In sum, based upon our review of the record, we cannot say that the trial court's determinations as to respondent's unfitness were unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion is clearly apparent.

¶ 55                                    C. Best Interests

¶ 56    Respondent likewise argues that the trial court failed to make findings of fact sufficient to support the best-interests determinations. The focus of a termination proceeding shifts to the child following a finding of unfitness. *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 75. "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. The parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *Id.* Accordingly, at the best-interests stage, the following factors must be considered in the context of the child's age and developmental needs: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures, siblings, and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 57    Here, following the best-interests hearing, the trial court found, based on Williams's testimony, that it was in the best interests of Tr. A. and Ty. A. that respondent's parental rights be terminated. In this regard, the trial court noted, "All the needs of the minor children are being met in their current placement, feel loved, they're bonded. Description of their family life is that it is, in fact, just that, a family and that's how the children view their current caregivers."

¶ 58    Respondent contends that the trial court's best-interests determinations were against the manifest weight of the evidence because the court considered only one factor—Tr. A.'s and Ty. A.'s sense of attachments—and failed to consider the other statutory factors. We disagree. The trial court's best-interests determinations "need not contain an explicit reference to each of [the statutory] factors, and we need not rely on any basis used by the trial court in affirming its decision." *Davon H.*, 2015 IL App (1st) 150926, ¶ 78.

¶ 59    Here, the record supports the trial court's best-interests determinations. The evidence at the hearing established that Tr. A. and Ty. A. were placed together in the care of a relative and have been in that placement since August 2018. Williams testified that Tr. A. and Ty. A. have a bond with their foster mother and have continued interaction with their other siblings and extended family. Moreover, Williams testified, the children are "well cared for," with their educational and medical needs met. They are attached to their foster mother and receive direction, affection, and comfort from her. Williams further testified that respondent had been inconsistent with visitation and that Tr. A. and Ty. A. did not question it when their visitation with respondent was reduced. Rather, they consider the foster placement their home. As Williams explained: "This is their family. They're comfortable there. They're doing well there." Accordingly, based upon our review of the record, we cannot say that the trial court's determinations that it was in the best interests of Tr. A. and Ty. A. to terminate respondent's parental rights were unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion is clearly apparent.

¶ 60                                D. Expedited Termination

¶ 61    Alternatively, respondent argues that the trial court erred in expediting the termination of her parental rights. Section 1-2(1) of the Act (705 ILCS 405/1-2(1) (West 2018)) sets forth a nonexhaustive list regarding when it might be appropriate for the State to seek expedited

termination of parental rights. *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 63. The list includes, similar to the State's allegations here, that the child or another child of the respondent was tortured or chronically abused and that the case was an extreme one in which the respondent's incapacity to care for the child, combined with an extremely poor prognosis for treatment rehabilitation, justified expedited termination. See 705 ILCS 405/1-2(1) (West 2018).

¶ 62    The Act further provides that parental rights may be terminated in an expedited manner at the initial dispositional hearing, provided that the following conditions are met: (1) the original or amended petition for adjudication of wardship contains a request for termination of parental rights and the appointment of a guardian with the power to consent to adoption; (2) the trial court must find, by a preponderance of the evidence introduced or stipulated to at an adjudicatory hearing, the abuse, neglect, or dependency of the minor; (3) the trial court must find, on the basis of clear and convincing evidence admitted at the adjudicatory hearing, that the parent is unfit; and (4) the trial court must determine, in accordance with the rules of evidence for dispositional proceedings, that it is in the best interests of the minor and the public for the minor to be made a ward of the court, that reasonable reunification efforts are inappropriate or were unsuccessful, and that termination of parental rights and the appointment of a guardian with the power to consent to adoption is in the minor's best interests. 705 ILCS 405/2-21(5) (West 2018); *Tyianna J.*, 2017 IL App (1st) 162306, ¶¶ 45, 72.

¶ 63    Respondent argues that the State was precluded from proceeding on its motion to expedite termination of parental rights, because neither the original nor the amended petition for adjudication of wardship contained a request for termination of parental rights and the appointment of a guardian with the power to consent to adoption. Moreover, respondent argues, the trial court

failed to comply with the conditions for expedited termination outlined in section 2-21(5) of the Act (705 ILCS 405/2-21(5) (West 2018)).

¶ 64    However, while the State styled its motions as expedited, the record demonstrates that the trial court did not in fact terminate respondent's parental rights in an expedited fashion. The conditions for expedited termination apply when the trial court terminates parental rights at the initial dispositional hearing. *Id.*; see also 705 ILCS 405/2-23(7) (West 2018)) ("The Court may terminate the parental rights of a parent at the initial dispositional hearing if all of the conditions in subsection (5) of Section 2-21 are met."). Respondent's parental rights were not terminated at the dispositional hearing that occurred on March 29, 2019. Indeed, the State did not even request to expedite termination of respondent's parental rights until it filed its motions to expedite termination of parental rights on December 12, 2019, and December 13, 2019. Throughout the entirety of the case, DCFS continued to offer services to respondent through service plans. The termination hearing did not occur until February 28, 2020. Accordingly, the record demonstrates that the termination of respondent's parental rights was not expedited, as she argues. Thus, respondent provides no basis for reversal on the ground of failure to comply with the requirements for expedited termination of parental rights.

¶ 65                                III. CONCLUSION

¶ 66    For the reasons set forth above, we affirm the judgment of the circuit court of De Kalb County.

¶ 67    Affirmed.

---

**No. 2-20-0225**

---

| | |
|---|---|
| **Cite as:** | *In re Tr. A.*, 2020 IL App (2d) 200225 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, Nos. 18-JA-46, 18-JA-47; the Hon. Ronald Matekaitis, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Amanda C. Wielgus, of Klein, Stoddard, Buck & Lewis, LLC, of Sycamore, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---