2023 IL App (2d) 230082-U
No. 2-23-0082
Order filed July 18, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Ja. C., Ju. C., L.C., and C.C., Minors | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| | ) | Nos.   21-JA-177 |
| | ) | 21-JA-178 |
| | ) | 21-JA-179 |
| | ) | 21-JA-180 |
| | ) | |
| (The People of the State of Illinois, Petitioner-Appellee, v. Jennifer A., Respondent-Appellant). | ) | Honorable |
| | ) | Reginald C. Mathews, |
| | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appellate counsel's motion to withdraw is granted where no meritorious issues could be raised on appeal, and the trial court's judgment terminating respondent's parental rights is affirmed.

¶ 2    On February 21, 2023, the circuit court of Lake County entered orders terminating the parental rights of respondent, Jennifer A., with respect to her four children, Ja. C., Ju. C., L.C., and C.C. Respondent timely appealed, and her appointed counsel has moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1968). See *In re Alexa J.*, 345 Ill. App. 3d 985 (2003) (holding that *Anders* applies in termination of parental rights cases and outlining the procedure to be

followed when appellate counsel seeks to withdraw). Appellate counsel's notice of filing and proof of service indicate that he sent to respondent by certified mail a copy of the motion to withdraw. More than 30 days has elapsed and respondent has not filed a response. Appellate counsel contends that the appeal of this case presents no potentially meritorious issues for review. After reviewing the record and counsel's motion, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4       Respondent gave birth to four children: C.C. in 2010, L.C. in 2011, Ju. C. in 2012, and Ja. C. in 2014. Luis C., with whom respondent had been in a longstanding relationship, was determined to be the father of three of the children, and "Deangelo" was the putative father of L.C. On August 10, 2018, the State filed a petition for adjudication of wardship and sought to take the children into temporary custody. The State alleged that the family home was filthy, with garbage everywhere and the walls and ceilings covered in old food. On August 10, 2018, the trial court entered a temporary custody order placing the children with the Department of Children and Family Services (Department).

¶ 5       On January 17, 2019, the trial court adjudicated the minors to be wards of the court. On February 14, 2019, the court ordered respondent and Luis C. to complete the following assessments and to engage in indicated programs: drug or alcohol, psychological or psychiatric, parenting, domestic violence, individual counseling, and family therapy (if clinically indicated).

¶ 6       On July 21, 2021, the State filed a petition to terminate respondent's parental rights. The State alleged that respondent was unfit because she failed to make reasonable progress toward the return of the children in three nine-month periods: February 15, 2019, to November 15, 2019;

December 1, 2019, to September 1, 2020; and September 2, 2020, to June 2, 2021. See 750 ILCS 50/1(D)(m)(ii) (West 2020) (failure of the parent to make reasonable progress toward the return of the child in any nine-month period following the adjudication of the child to be neglected or abused).

¶ 7    On November 9, 2021, the petition to terminate parental rights advanced to a hearing. Debra Spillane, the caseworker for the children beginning in November 2020, testified that she was affiliated with the service provider, Arden Shore. During the lifetime of the children's cases, respondent had been given service plans with the same requirements: complete a substance abuse assessment and follow the recommendations, submit to random drug testing, complete domestic violence counseling, complete a parenting class and parenting coaching, consistently visit the children, cooperate with mental health services as needed, and provide stable housing and proof of income.

¶ 8    Regarding the service plan rated on August 13, 2019, Spillane testified that respondent was rated unsatisfactory for substance abuse treatment because she did not complete an assessment after being referred to Nicasa, a behavioral health service provider, and then upon her request, to Renacer Latino, a more conveniently located provider, and she had missed numerous drug testing appointments. Respondent was also rated unsatisfactory for domestic violence treatment because she failed to complete an evaluation. However, respondent had completed parenting classes at Arden Shore, and she received a satisfactory rating. Respondent was rated unsatisfactory for mental health services because, despite completing an assessment, she did not follow through with the recommended individual therapy. Respondent was rated as satisfactory for providing stable

housing, but unsatisfactory for income, because she did not provide verification for where she was working.

¶ 9 Spillane next testified about respondent's service plan rated on February 26, 2020. Regarding substance abuse services, in October 2019, respondent completed a substance abuse evaluation. Respondent was rated unsatisfactory for the substance abuse task because she did not attend any of the recommended intensive outpatient treatment. Likewise, respondent did not complete any of the scheduled drug testing appointments for the August 2019 to February 2020 rating period. Regarding domestic violence, respondent received a rating of satisfactory because, in September 2019, she completed an evaluation and attended 4 of the recommended 26 sessions and was excused for missing the other sessions. Regarding mental health, respondent was rated as unsatisfactory because she was inconsistent in attending her individual therapy sessions. Respondent's visitation, housing, and income were rated satisfactory.

¶ 10 Spillane testified about respondent's service plan rated on August 10, 2020. During the February to August 2020 rating period, respondent was rated unsatisfactory on her substance abuse service plan because she did not complete any sessions at Renacer Latino, and she did not participate in any drug testing. While respondent had been allowed unsupervised visitation in the previous rating period, that privilege was revoked because respondent did not cooperate with her substance abuse treatment and, overall, did not cooperate with any of the recommended services. Nevertheless, respondent received a satisfactory rating regarding visitation because she consistently participated in supervised visitation with her children. Once again, however, respondent was rated unsatisfactory with regard to mental health services because she did not participate in individual therapy, and she was unsuccessfully discharged from individual therapy.

¶ 11    Spillane next testified about respondent's service plan rated on January 14, 2021. During the August 2020 to January 2021 rating period, the children's permanency goal was changed from return home to substitute care pending termination of respondent's parental rights. Respondent was again rated unsatisfactory for substance abuse because she neither participated in the prescribed treatment nor submitted to any drug testing. In addition, respondent was rated unsatisfactory for domestic violence because she did not complete any sessions for that service. Respondent was rated unsatisfactory for visitation because she was not consistent with her visits with the children. Spillane elaborated about visitation, noting that respondent was making inappropriate comments to the children during the visits. Respondent was rated unsatisfactory for mental health services; after a referral to Arden Shore for individual therapy, she completed no individual therapy sessions. Respondent was, however, rated as satisfactory regarding housing and income.

¶ 12    Spillane testified that, in the rating period comprising January to July 2021, respondent made progress in completing prescribed services. Respondent completed her domestic violence and substance abuse services. Respondent continued to be uncooperative with drug testing, and she did not complete her mental health services or individual therapy. Respondent also did not complete her parenting coaching services. Finally, Spillane noted that respondent did not consistently communicate with the children on their birthdays and on holidays, even though Spillane had encouraged respondent to do so.

¶ 13    After Spillane's testimony, the parties rested and provided arguments to the trial court. On February 16, 2023, the court pronounced its judgment regarding the unfitness stage. The court determined that the State had proved respondent's unfitness by clear and convincing evidence for

the nine-month periods of February 15, 2019, to November 15, 2019, and from December 1, 2019, to September 1, 2020. Specifically, the court recounted the circumstances that brought the children into the system, namely, respondent's mental health, substance abuse, and domestic violence issues. It noted that respondent failed to partake in the mental health, substance abuse, and domestic violence services until after the goal had been changed from return home to termination of parental rights. In addition, the court noted that, in March or April 2019, respondent was injured in a domestic violence altercation with Luis C., when he allegedly pushed her, and she fell into the street and was struck by a car. The court concluded that, because of respondent's reluctance to engage in services, the State had proved by clear and convincing evidence that respondent had not made reasonable progress toward the return of the children.

¶ 14    Turning to the December 2019 to September 2020 nine-month period, the court again noted that respondent was not participating in the mental health, domestic violence, and substance abuse services. Specifically, respondent did not cooperate in drug testing and did not consistently attend domestic violence or mental health therapy sessions. It was only after the goal had been changed from return home to termination of parental rights that respondent began to consistently participate in the offered services. The court concluded that the State had proved by clear and convincing evidence that respondent had not made reasonable progress toward the return of the children.

¶ 15    Regarding the third nine-month period of September 2, 2020, through June 2, 2021, the court concluded that the State failed to prove that respondent had not made reasonable progress. Respondent completed both substance abuse counseling and domestic violence counseling during this period, and, given the importance of substance abuse and domestic violence to the conditions

that brought the children into the care of the Department, the court concluded that respondent had made progress toward the return of the children.

¶ 16    However, based on its determination regarding the initial two nine-month periods, the trial court concluded respondent had not made reasonable progress toward the return of the children. The court entered a judgment of unfitness against respondent.

¶ 17    The matter then moved on to the consideration of the best interests of the children. Spillane again provided testimony for the State regarding the children's interests. Spillane testified that the children had been residing with their paternal aunt and uncle for nearly three years (and with their paternal aunt and uncle for most of the five years they had been in the Department's care). The foster home met the children's needs for food, clothing, and shelter. The children had all bonded with their foster family, and the children engaged in family activities with the foster family, including vacations. The children regularly attended school and were supported by the foster parents in their schooling and extracurricular activities. The foster parents were also willing to adopt the children, and Spillane opined it was in the children's best interests for them to be adopted into their foster family.

¶ 18    Spillane testified during the guardian *ad litem*'s cross-examination that she visited the minors on a monthly basis and was able to speak to them outside of the presence of the foster parents. The minors told Spillane that they wished to be adopted by the foster parents.

¶ 19    Following Spillane's testimony and the admission of various reports into evidence, the trial court ruled on the children's best interests. The court determined that the State had met its burden and it was in the children's best interests to terminate respondent's parental rights.

¶ 20    Respondent filed a timely notice of appeal and counsel was appointed to represent her on appeal. Appellate counsel now moves to withdraw, asserting that any argument respondent could make on appeal would be without merit.

¶ 21                                    II. ANALYSIS

¶ 22    Counsel seeks to withdraw, contending that, on this record, there are no potentially meritorious issues. In *Alexa J.*, 345 Ill. App. 3d at 988-89, this court held that counsel must follow the *Anders* procedure and provide a record of the unfitness and best interests hearing. In addition, counsel must, if possible, identify any potentially meritorious issues and demonstrate why they are not meritorious. *Id.*

¶ 23    On appeal, counsel avers that he has reviewed the record on appeal and concluded that no issues of arguable merit exist. Counsel has addressed both the unfitness and best interests determinations and has concluded that neither determination was in error. Counsel concludes that it would be frivolous to argue that the trial court erred in either determination. We agree.

¶ 24    As an initial matter, the involuntary termination of parental rights involves a two-step process: first, there must be a showing, demonstrated by clear and convincing evidence, that the parent is unfit as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)); second, if the trial court finds the parent to be unfit, it then considers whether it is in the best interests of the child that parental rights be terminated. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). The State alleged, and the court determined, that respondent was unfit under section 1(D)(m)(ii) of the Adoption Act, which provides "[f]ailure by a parent *** to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication" of neglect or abuse. *Id.* § 1(D)(m)(ii). In considering a trial court's determination of unfitness, we

note that any single ground, properly proven, is sufficient to sustain a finding of unfitness. *C.W.*, 199 Ill. 2d at 210. A reviewing court will disturb the trial court's judgment of unfitness only if it is against the manifest weight of the evidence. *Id.* at 211.

¶ 25 To determine whether a parent has made reasonable progress, the trial court should measure the parent's progress against what must occur before a child can safely return to the parent. *In re C.N.*, 196 Ill. 2d 181, 213-14 (2001). The court's focus, given the importance of the rights at stake, "in evaluating a parent's progress toward the return of the child remains, at all times, on the fitness of the parent in relation to the needs of the child." *Id.* at 216. To measure whether a parent's progress is reasonable, we employ an objective assessment of a parent's progress in a given period toward reunification with the child, and this includes considering the parent's compliance with service plans and court orders. *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 7. A trial court can make a finding of reasonable progress only if the parent's actions during the period show that the court will be able to order the child to be returned home in the near future. *Id.*

¶ 26 Here, counsel is correct that it would be frivolous to argue the trial court's finding that respondent failed to make reasonable progress towards the return of the four children was against the manifest weight of the evidence. In the two nine-month periods of February 15, 2019, to November 15, 2019, and December 1, 2019, to September 1, 2020, Spillane's testimony and the service plan evaluations indicate that respondent did not engage in substance abuse services, domestic violence services, and mental health services. These three areas, substance abuse, domestic violence, and mental health, all strongly contributed to the conditions that resulted in the findings of neglect for the children and contributed to the dangerous environmental conditions in

which the children found themselves.  Additionally, because intervention was necessitated due to incidents of domestic violence exacerbated by alcohol usage, it was of paramount importance that respondent engage in and complete services related to substance abuse and domestic violence.  In neither of these nine-month periods did respondent make headway in undertaking the services, let alone completing them.  As a result, the trial court's determination of unfitness was not against the manifest weight of the evidence.

¶ 27    Because any single ground properly proven may support a finding of unfitness (*C.W.*, 199 Ill. 2d at 210), whether respondent made progress towards reunification in the nine-month period of September 2, 2020, to June 2, 2021, does not diminish or outweigh her failures to make reasonable progress in the previous two nine-month periods.  While respondent had completed some services, she continued to be uncooperative with drug and alcohol testing and mental health services, both of which were key areas regarding the issues that caused the Department's intervention with the children. Moreover, the trial court did not find that respondent made reasonable progress in the September 2020 to June 2021 period; instead, it determined that the State had not proved by clear and convincing evidence that respondent failed to make reasonable progress.  Thus, the court did not make an affirmative finding of reasonable progress; rather, it determined the State had not carried its burden of proof for the third nine-month period.  Even if the trial court's finding for the third nine-month period could somehow be transformed into an affirmative finding of reasonable progress, the record clearly demonstrates that respondent failed to make reasonable progress through most of the life of the case, and these findings both support the court's unfitness determination and are not against the manifest weight of the evidence.  See *id.* (an unfitness finding may be based on a single ground).  Accordingly, even if respondent could

argue that she made reasonable progress towards the children's return during the third nine-month period, such an argument does not invalidate or overcome the findings that she failed to make reasonable progress towards reunification with the children in each of the first two nine-month periods, especially where she failed to engage in services central to the reasons her children were found to be neglected.

¶ 28    After the parent is found unfit, the focus of the proceedings shifts to the child, and the issue shifts from whether the parent's rights can be terminated to whether, in light of the child's needs, parental rights should be terminated. *In re Tr. A.*, 2020 IL App (2d) 200225, ¶ 56.  During the best interests stage, the trial court considers the following factors in the context of the child's age and developmental needs: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures, siblings, and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. *Id.*, see also 705 ILCS 405/1-3(4.05) (West 2020).  A reviewing court will not disturb the trial court's findings regarding the child's best interests unless the decision is against the manifest weight of the evidence. *Tr. A.*, 2020 IL App (2d) 200225, ¶ 32.

¶ 29    In making its best-interests determination, the trial court focused, as required, on the children and considered the above factors.  The court particularly noted that the length of time the children had been in care, their safety and welfare with the foster family, and the bonds the children had formed with their foster parents all strongly supported terminating respondent's parental

rights.  In addition, the court noted that the children all wanted to be adopted by the foster parents, and the foster parents were willing and able to adopt the children.  Finally, the court noted that the children were thriving with the foster parents.  We have carefully reviewed the record and find that any argument that the trial court's determination was against the manifest weight of the evidence would be frivolous.

¶ 30                                  III. CONCLUSION

¶ 31    For the foregoing reasons, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 32    Affirmed.